DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Plaintiff-Appellant Ben Goeller ("Goeller") has appealed from the judgment of the Lorain County Court of Common Pleas, Juvenile Division, which dismissed his complaint seeking companionship with a minor child, Bryan Goeller ("Bryan"). This Court reverses.
 I {¶ 2} The instant matter appears before this Court for the fourth time. The facts giving rise to the numerous appeals are as follows. Bryan was born on June 14, 1993. Bryan's mother, Rondi, was married to Goeller at the time of his birth. Rondi died as a result of a brain aneurysm when Bryan was only four months old. On February 14, 1995, Defendant-Appellee Richard Lorence ("Lorence") commenced an action to establish paternity. Genetic testing revealed that Lorence was Bryan's biological father. As a result, the parties entered into a shared parenting plan. This Court found such a plan to be void ab initio because Lorence and Goeller were not both the natural parents of Bryan and restored Goeller as the sole custodial parent. See Lorence v. Goeller
("Goeller I") (July 19, 2000), 9th Dist. No. 98CA007193.
 {¶ 3} Following our remand of Goeller I, Goeller moved to dismiss Lorence's action which sought to establish paternity, asserting that the action violated his constitutional right to an intact family. This Court found that Goeller's challenge was untimely and affirmed the trial court's denial of Goeller's motion to vacate the order which established paternity. Lorencev. Goeller ("Goeller II") (Mar. 6, 2002), 9th Dist. No. 01CA007820. Following remand of Goeller II, Lorence filed a complaint for legal custody of Bryan. The matter proceeded to a contested custody hearing in May of 2004. Following the hearing, the trial court granted Lorence's motion, awarding him legal custody of Bryan. Thus, for the first time, at age 11, Bryan no longer lived with Goeller and began living with Lorence. Goeller appealed and the matter came before this Court for a third time.
 {¶ 4} In the third appeal of this matter, Goeller asserted that the trial court erred in determining that Lorence should have legal custody of Bryan. This Court found that the trial court had properly applied the law and affirmed its decision regarding custody. See Lorence v. Goeller ("Goeller III"), 9th Dist. No. 04CA008556, 2005-Ohio-2678. In addition, we found that the trial court had not erred when it failed to grant visitation because Goeller had not filed a motion for visitation. Specifically, we held as follows:
"There is no dispute that appellant, as a widower, is a relative of the child's deceased mother. Appellant's assignment of error must fail, however, because appellant failed to file a complaint for visitation or companionship of the minor child." Id. at ¶ 29.
 {¶ 5} After Goeller III was concluded, Goeller filed a complaint for visitation in the trial court. Lorence moved to dismiss the motion, asserting that Goeller did not have standing under the Revised Code to pursue visitation. On February 3, 2006, the trial court agreed with Lorence and granted the motion to dismiss. Goeller has timely appealed the trial court's decision, raising one assignment of error for review.
 II Assignment of Error
"THE TRIAL COURT ERRED AND ABUSED IT DISCRETION WHEN IT HELD THAT MR. GOELLER'S STATUS AS A WIDOWER TERMINATED UPON REMARRIAGE BECAUSE THE TERM `WIDOW' REFERS TO THE PERSON AND NOT TO THE CONTINUED MARITAL STATUS OF THAT PERSON[.]"
 {¶ 6} In his sole assignment of error, Goeller has argued that the trial court erred in dismissing his complaint for visitation. Specifically, Goeller has alleged that the trial court improperly interpreted the provisions of R.C. 3109.11. This Court agrees.
 {¶ 7} A trial court may grant a Civ.R. 12(B)(6) motion to dismiss only if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle that plaintiff to relief. O'Brien v. Univ. Comm. Tenants Union (1975),42 Ohio St.2d 242, syllabus. The trial court must accept the plaintiff's factual allegations as true and make every reasonable inference in favor of the plaintiff. Byrd v. Faber (1991),57 Ohio St.3d 56, 60. Therefore, by also accepting these facts as true, this Court reviews the dismissal de novo, as a question of law.Perrysburg Twp. v. Rossford, 103 Ohio St.3d 79, 2004-Ohio-4362, at ¶ 5.
 {¶ 8} In determining this appeal, this Court must interpret the provisions of R.C. 3109.11. In interpreting a statute, a court's paramount concern is legislative intent. State ex rel.United States Steel Corp. v. Zaleski, 98 Ohio St.3d 395,2003-Ohio-1630, ¶ 12. To determine this intent, we read words and phrases in context and construe them in accordance with the rules of grammar and common usage. R.C. 1.42; Hedges v. NationwideMut. Ins. Co., 109 Ohio St.3d 70, 2006-Ohio-1926, ¶ 24. Under this framework, we examine R.C. 3109.11.
 {¶ 9} R.C. 3109.11 provides in pertinent part as follows:
"If either the father or mother of an unmarried minor child is deceased, the court of common pleas of the county in which the minor child resides may grant the parents and other relatives
of the deceased father or mother reasonable companionship or visitation rights with respect to the minor child during the child's minority if the parent or other relative files a complaint requesting reasonable companionship or visitation rights and if the court determines that the granting of the companionship or visitation rights is in the best interest of the minor child." (Emphasis added.)
In reaching its conclusion that Goeller did not meet the standing criteria contained in R.C. 3109.11, the trial court held as follows:
"In the present case, Goeller unfortunately lost his status as Rondi's widower/surviving spouse when he remarried. He contemporaneously lost his status as her relative and consequently has no standing to pursue [visitiation.]"
Upon review, we find error in the trial court's interpretation.
 {¶ 10} Initially, we note that the trial court relied exclusively upon the dictionary definition of "widow" when it reached its decision. In so doing, the trial court found that Goeller's remarriage required a finding that he was no longer Rondi's widower. In so doing, the trial court ignored Goeller's status as Rondi's surviving spouse. By definition, a surviving spouse is "[a] spouse who outlives the other spouse." Black's Law Dictionary (8 Ed. 2004) 1439. Unlike the definition of widow, surviving spouse includes no conditions which would serve to terminate Goeller's existence as Rondi's surviving spouse, i.e., by definition, Goeller will forever be Rondi's surviving spouse, regardless of remarriage.
 {¶ 11} Furthermore, we find error in the trial court's sole reliance upon the dictionary definition of "widow" as it wholly ignores legislative intent. Prior to 2000, a surviving parent's subsequent remarriage and the adoption of the child by the surviving parent's new spouse eliminated the right to seek visitation under R.C. 3109.11. However, in 2000, R.C. 3109.11 was amended to read as follows:
"The remarriage of the surviving parent of the child or theadoption of the child by the spouse of the surviving parent ofthe child does not affect the authority of the court under this section to grant reasonable companionship or visitation rights with respect to the child to a parent or other relative of the child's deceased father or mother." (Emphasis added to amended language.)
Accordingly, as recently as 2000, the General Assembly has sought to expand the visitation rights afforded under R.C.3109.11. In contrast, the interpretation utilized by the trial court would serve to restrict the class of individuals capable of seeking visitation. As such an interpretation flows against the General Assembly's intent, it is untenable.
 {¶ 12} Furthermore, the trial court's interpretation presents Goeller with a "Morton's Fork" scenario, i.e., he may choose between two alternatives, both of which are unpleasant. He may a) remarry and forego any opportunity to seek visitation with the child he has raised as his own for eleven years or b) seek visitation rights with that child and forego the opportunity to remarry and pursue his own future happiness. "Marriage is one of the `basic civil rights of man,' fundamental to our very existence and survival." Loving v. Virginia (1967), 388 U.S. 1,12, quoting Skinner v. State of Oklahoma (1942), 316 U.S. 535,541. Accordingly, we are not inclined to interpret the provisions of R.C. 3109.11 in a manner that may infringe upon that right.
 {¶ 13} Additionally, this Court agrees with Goeller's argument that his relationship by affinity with Rondi is not terminated by his remarriage or her death. In interpreting Ohio's descent and distribution statute, the Ohio Supreme Court held as follows:
"There has not been, nor certainly can there be, any question as to the kinship between an illegitimate child and his mother. And the subsequent marriage of that mother creates an affinity between her kindred and the man she marries. Is that affinity terminated by the happenstance that she predeceases her husband? We think such a result is not required either by our statute or by the weight of authority in this country." (Internal citations omitted.) Kest v. Lewis (1959), 169 Ohio St 317, 320.
Accordingly, Rondi's death did not serve to sever Goeller's relationship by affinity with her.
 {¶ 14} Thus, this Court must consider whether his remarriage served to sever his relationship with Rondi. Under the statute at issue, we find that the legislature did not intend such a result. Initially, we note that by its plain language, R.C. 3109.11 is designed to serve the best interests of the child. A stepfather or stepmother undoubtedly may create a close bond with a stepchild. For example, Bryan lived with Goeller for the first eleven years of his life, undoubtedly creating a bond that will never be severed. Furthermore, there is no indication that the general bond formed between stepparents and stepchildren is severed through the stepparent's remarriage. Sjogren v. Metro.Prop. and Cas. Ins. Co. (R.I., 1997), 703 A.2d 608, 611 ("many stepchildren and stepparents maintain close relationships following the death of the child's natural parent.") Thus, permitting a surviving stepparent to pursue visitation, fulfills the intent expressed in R.C. 3109.11 of providing for the child's best interests. See Graziano v. Davis (1976) 50 Ohio App.2d 83,87 (finding that R.C. 3109.11 "vests in the minor child the right to the companionship and visitation of its relatives.").
 {¶ 15} Additionally, in contrast to the limited definition used by the trial court, other courts have found that the term "widow" can survive despite a remarriage. See In re Waters'Estate (1951), 63 Ohio Law Abs. 34. In so finding, the court noted that the legislature "used the word `widow' as being descriptive of, and the means of identifying, a certain individual woman who has lost her husband by death, rather then as referring to the unmarried status of such individual." See id. We agree with the rationale espoused by the Third Circuit as follows:
"While it is true that the ordinary dictionary definition of `widow' is an unmarried woman whose husband is dead, the legal consequences arising from the use of a term in legislation are not necessarily determined by its dictionary definition. The term `widow', as used in statutes, has been held repeatedly to refer to the person of the surviving spouse rather than to marital state or condition." (Footnote omitted.) Trathen v. UnitedStates (C.A.3, 1952), 198 F.2d 757, 759.
Furthermore, numerous state court cases have found that if the legislature had intended that remarriage should eliminate a statutory right, it could have so specified in that statute. See, e.g., Henderson Police Fireman Pension Bd. v. Riley (Ky., 1984), 674 S.W.2d 27, 31.
 {¶ 16} In R.C. 3109.11, the legislature has used broader language than the statutes interpreted by the above courts, using only the term "relatives" with no modifiers, and has expressly provided that remarriage of the surviving parent shall have no effect on the rights of others to seek visitation. By using the term "relative", the legislature has not differentiated between relationships by consanguinity and relationships by affinity. Accordingly, we see no reason to treat the remarriage of the surviving relatives differently than the remarriage of the surviving parent. We agree with the Iowa Supreme Court which held that once it is determined that the death of the mother does not sever the tie of affinity, there is no reason to conclude that remarriage should sever that tie. Farnsworth v. Iowa State TaxCommn. (1965), 257 Iowa 280, 284. Accordingly, the trial court erred in determining that Goeller lost his status as a "relative" when he remarried and therefore erred in determining that Goeller lacked standing to pursue visitation under R.C. 3109.11.
 {¶ 17} In conclusion, we note that it is unclear from the record why Lorence has so adamantly resisted granting Goeller visitation rights. For the first eleven years of his life, Bryan resided with Goeller. It was Lorence who intruded upon Goeller's family unit, asserting that he had fathered a child with Goeller's then wife. Despite that intrusion, Goeller cooperated with Lorence and even entered into a shared parenting plan granting Lorence visitation rights, albeit a plan that was found to be void. This Court cannot fathom how it could be in Bryan's best interest to have his ties with the man who raised him from birth so abruptly severed. However, as that record has not been developed in the trial court, we will not make such a determination herein.
 {¶ 18} Goeller's sole assignment of error has merit.
 III {¶ 19} Goeller's sole assignment of error is sustained. The judgment of the Lorain County Court of Common Pleas, Juvenile Division, is reversed and the cause remanded for further proceedings consistent with this opinion.
Judgment reversed, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellee.
Slaby, P.J. Carr, J. concur.