SKIRVIN, Appellant,

v.

KIDD et al., Appellees.

[Cite as *Skirvin v. Kidd,* 174 Ohio App.3d 273, 2007-Ohio-7179.]

Court of Appeals of Ohio,
Fourth District, Highland County.

No. 06CA43.

Decided Dec. 20, 2007.

274

Fred J. Beery, for appellant.

W. Kenneth Zuk, for appellees.

HARSHA, Judge.

{¶ 1} Alfred T. Skirvin appeals a judgment in his favor on his claim that Mark and Samantha Kidd ("the Kidds") failed to make repairs to a septic system located on land Skirvin purchased from them. Skirvin contends that the contract required the Kidds to pay the cost of replacing the entire septic system. The trial court reviewed various "addenda" to the original contract and determined that the terms were clear and that the parties' final intent was that the Kidds would complete and guarantee the leach field for only two years. The only guarantee relating to the rest of the septic system was for a one-year period.

{¶ 2} We agree with the trial court that the addenda, the stipulations, and the other documents the parties submitted reveal an intention that the Kidds would repair or replace the leach field and guarantee it for two years. We also agree with the trial court that the contract required the Kidds to guarantee the rest of the septic system for only one year from the date of closing. But because there is no evidence in the record to establish that the septic system failed in any respect other than the faulty leach field during the one-year period, the Kidds were not required to replace the entire septic system. Accordingly, we overrule Skirvin's sole assignment of error.

## I. Facts

{¶ 3} Skirvin filed a complaint that alleged that the Kidds had breached a real estate contract by failing to complete the existing septic system located on the residential property he purchased from them. He sought a judgment of $15,500, the amount he ultimately paid to replace the entire septic system, plus costs and interest. After the parties unsuccessfully filed cross-motions for summary judgment, they entered into various stipulations, which included several documents, and submitted the matter to the trial court for a decision.

{¶ 4} According to the evidence they submitted, on December 7, 2001, Skirvin agreed to purchase residential property the Kidds owned. At the time of the execution of the contract, the parties were aware of a problem with the existing leach lines of the septic system. As noted by the trial court, the copy of the original contract contained in the record is virtually illegible. However, the contract had three addenda, which are legible.

{¶ 5} The first addendum contains multiple acknowledgment dates, interlineations, and deletions.[1]  However, it clearly states: "The seller will complete the leach field to meet the local health codes.  * * * The seller will guarantee the septic system for a period of one year from the date of closing."  The copy of this addendum in the record shows that it originally stated "buyer" will complete the leach field, but the word "buyer" was crossed out and replaced with "seller."

{¶ 6} The second addendum states: "Please note addendum # 1 had buyer will complete leach field.  This has been changed to seller.  * * * Seller is to guarantee leach field for a period of one year from the date of closing.  Septic system to be completed by closing weather permitting."

{¶ 7} The first two addenda, which were signed by Skirvin and the Kidds, also contained the following provision: "This addendum becomes an integral part of the Contract.  Except as amended or modified by this addendum, the Contract, in all other respects, remains the same."

{¶ 8} Finally, the relevant portion of the third addendum, which was signed only by the Kidds, states: "The sellers Mark Kidd and Samantha Kidd have agreed to complete the leach field of 1084 DeHass Lane, Sardinia, Ohio.  Their contractor, who is being paid by the sellers, will meet the requirements of the local health codes and will guarantee the leach field for a period of two years.  Time is of the essence, weather permitting work must be completed as soon as possible."

{¶ 9} There is no dispute that the Kidds did not complete repairs to the leach field.  In the fall of 2005, over three years from the date of the closing, Skirvin paid WOW Plumbing $15,500 to replace the entire septic system, including an aeration tank, infiltrator leach lines, and 550 feet of curtain drain with a pumping station to a road ditch.  WOW also collapsed and filled the old septic tank and topped off the leach field with 40 tons of top soil.  Skirvin then filed the complaint, seeking to recover $15,500 in damages.

{¶ 10} Based on its review of the evidence, including the three addenda and the parties' stipulations, the trial court determined that the contract only required the Kidds to complete the leach field to meet local health codes and to guarantee it for a period of two years.  The trial court awarded Skirvin $3,600 in damages based on the parties' stipulation that the cost of replacing the leach lines in January 2002 would have been $3,600.

{¶ 11} Skirvin assigns the following error:

---

1.  To say the addenda are very loosely and inartfully drawn would be charitable.

The trial court's determination that the contract only obligates the seller to repair the leach field and not the entire septic system is against the manifest weight of the evidence and the law.

## II. Standard of Review

{¶ 12} In his sole assignment of error, Skirvin contends that the trial court's judgment is against the manifest weight of the evidence and the law.

{¶ 13} An appellate court will not reverse a trial court's judgment as being against the manifest weight of the evidence so long as it is supported by any competent, credible evidence going to all of the essential elements of the case. *Sec. Pacific Natl. Bank v. Roulette* (1986), 24 Ohio St.3d 17, 20, 24 OBR 14, 492 N.E.2d 438; *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 280, 8 O.O.3d 261, 376 N.E.2d 578. Under this highly deferential standard of review, a reviewing court does not decide whether it would have come to the same conclusion as the trial court. Rather, we are required to uphold the judgment so long as the record, as a whole, contains some evidence from which the trier of fact could have reached its ultimate factual conclusions. *Bugg v. Fancher*, Highland App. No. 06CA12, 2007-Ohio-2019, 2007 WL 1225734, at ¶ 9. When conducting its review, an appellate court must make every reasonable presumption in favor of the trier of fact's findings of fact. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273.

{¶ 14} In construing any written instrument, the primary and paramount objective is to ascertain the intent of the parties, and the general rule is that contracts should be construed so as to give effect to the intention of the parties. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 53, 544 N.E.2d 920. Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, at paragraph two of the syllabus. The issue of whether a contract is ambiguous presents a question of law. If the contract is ambiguous, then the court must construe the disputed language to ascertain the parties' intent. This function involves a question of fact. However, if a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to decide. *Latina v. Woodpath Dev. Co.* (1991), 57 Ohio St.3d 212, 214, 567 N.E.2d 262; *Inland Refuse Transfer Co. v. Browning–Ferris Industries of Ohio Inc.* (1984), 15 Ohio St.3d 321, 322, 15 OBR 448, 474 N.E.2d 271; *Alexander v. Buckeye Pipe Line Co.*, supra. Unlike determinations of fact, which are reviewed under the deferential weight of the evidence standard, we review

questions of law under a de novo standard of review without deference to the trial court's determinations.

### III. The Contract

{¶ 15} The trial court concluded that the terms of the contract were clear and required the Kidds to complete the leach field according to local health codes and to guarantee the leach field for two years. We agree.

{¶ 16} Initially, Skirvin complains that the trial court misapplied the law by considering the addenda to be amendments or changes to the contract rather than simply additions to it. We reject this contention for several reasons. An addendum is "a thing that is added or to be added; a list or section consisting of added material." An amendment is a "formal revision or addition proposed or made to a statute, constitution or other instrument." Black's Law Dictionary (6th Ed.1990) 37, 81. Because the copy of the original contract the parties submitted is illegible, it is impossible to tell whether the addenda merely added to its terms or sought to change some of them. Moreover, the first and second addenda contain the express language, "Except as amended or modified by this addendum, the contract * * * remains the same." Thus, the parties themselves blurred any distinction that might exist between the two terms of art. By their express terms, the first and second addenda became part of the original contract, and they amend or modify its previous language (the third addendum does not contain this integration provision and was not signed by Skirvin).

{¶ 17} The plain language of the first addendum required the Kidds to complete the leach field to meet the local health codes and to guarantee "the septic system" for a period of one year from the date of closing. The second addendum required the Kidds to complete the leach field and to guarantee "the leach field" for a period of one year from the date of closing, but did not include a requirement that the Kidds guarantee the septic system. It also required the Kidds to complete the septic system by closing, weather permitting. The third addendum required the Kidds to complete the leach field to meet local health codes and to guarantee "the leach field" for a period of two years. It did not mention the septic system.

{¶ 18} All three addenda expressly required the Kidds to "complete" the leach field. The term "complete" means "[h]aving all necessary or normal parts, elements, or steps: whole." Webster's II New College Dictionary (1999) 229. Giving the word "complete" its ordinary meaning, the parties intended that the Kidds would "complete" the leach field by making any necessary repairs to the existing parts of the leach field or, if necessary, replacing the entire leach field so that the leach field was working properly in accordance with local health codes.

{¶ 19} None of the addenda expressly required the Kidds to repair or replace any part of the septic system other than the leach field. However, the first addendum required the Kidds to guarantee the septic system for a period of one year from the date of closing. As Skirvin suggests, we believe this requirement remained part of the contract in spite of the subsequent addenda, which did not reference the "septic system." There is no language in either subsequent addendum that deletes the one-year guarantee concerning the septic system. The only reasonable interpretation is that when read together, the three addenda required the Kidds to guarantee most of the septic system for one year from the date of closing, but the leach field specifically for two years from that date. The trial court correctly determined the intent of the parties as revealed by the written agreements.

## IV. Damages

{¶ 20} Skirvin contends that the trial court erred in awarding him only $3,600 in damages when he had paid $15,500 to replace the septic system.

{¶ 21} As we previously noted, the appropriate standard of review to determine the propriety of the court's judgment is whether the decision is against the manifest weight of the evidence. In other words, we will not interfere with the trial court's decision if it is supported by some competent and credible evidence. See *C.E. Morris Co.*, supra.

{¶ 22} The contract required the Kidds to repair or replace the leach field. There is no dispute that the Kidds failed to perform that work. The trial court based its award of damages for the Kidds' failure to complete the leach field on the parties' stipulation that the cost of replacing the leach lines in January 2002 would have been $3,600. Accordingly, the trial court's decision in awarding Skirvin $3,600 in damages is supported by some competent and credible evidence.

{¶ 23} While Skirvin contends that the trial court should have awarded him damages in the amount of $15,500, the cost he paid in 2005 to replace the entire septic system, there is no evidence in the record showing that the septic system failed in any respect, other than the faulty leach field, during the first year. All the documents relating to the repairs by WOW plumbing are dated three years after the closing, and none of them indicate when the problems first occurred. In fact, there is no evidence to show what occurred between the closing and October 2005, when Skirvin hired the contractor to replace the entire system. There is, however, a copy of the "Residential Property Disclosure Form" signed and dated by the Kidds on August 8, 2001, which at paragraph B describes the "sewer system." It has an "X" marked in the box designated "leach field." There is no mark in the space provided for "septic tank." This is significant because Skirvin acknowledged receipt of the disclosure and gave notice of a problem on December

10, 2001. His written comment on the form was "Full & Inoperable. ATS. 12/10/01." He did not circle, mark or refer to the box marked "septic system" in any manner. The only box marked was "leach field."

{¶ 24} If he had a concern with the entire septic system rather than just the leach field, he should have specifically noted it in this memo. There is no evidentiary basis to require the Kidds to pay the cost of replacing the entire septic system. Therefore, the trial court did not err in awarding Skirvin only $3,600 for the cost of replacing the leach lines rather than $15,500 for the cost of replacing the entire septic system. We overrule Skirvin's sole assignment of error.

Judgment affirmed.

McFARLAND, P.J., and KLINE, J., concur.