McFALL et al., Appellants,

v.

WATSON et al., Appellees.

[Cite as *McFall v. Watson*, 178 Ohio App.3d 540, 2008-Ohio-5204.]

Court of Appeals of Ohio,
Fourth District, Vinton County.

No. 08CA666.

Decided Oct. 2, 2008.

Kathleen Adkins, appellant, pro se.

Susan Gwinn, for appellees.

McFARLAND, Judge.

{¶ 1} Plaintiff-appellant, Kathleen Adkins, appeals from the decision of the Vinton County Court of Common Pleas, Juvenile Division, dismissing her motion to intervene in her son's visitation complaint. Because the child's mother was unwed at the time of the child's birth and appellant is a relative of the mother, R.C. 3109.12 gives appellant standing to intervene in a complaint for visitation. Therefore, the trial court's decision to dismiss her motion for lack of standing was error.

## I. Facts

{¶ 2} This case involves appellant's assertion of visitation rights with a minor child. The child's biological parents are Iva McFall and Craig Watson. Appellant in this action, Kathleen Adkins, is the mother of Thomas McFall, the current husband of Iva McFall and stepfather of the child. Neither appellant nor her son Thomas is an adoptive parent of the child, nor are they biologically related to the child.

{¶ 3} The child was born in July 2004. At the time, Iva Collins,[1] the mother, was unmarried and living with Thomas McFall in the home he shared with appellant.[2] The child lived in appellant's home until June 2006. Appellant asserts that she and her son were the sole sources of financial and medical support for the child during that period, as Iva Collins was unemployed and did not provide for her daughter.

{¶ 4} Due to Iva Collins's continuing substance-abuse problems, Vinton County Children Services filed an action alleging child neglect. The trial court granted temporary custody of the child to the Vinton County Department of Job and Family Services. In June 2006, the child was removed from appellant's home and placed in the home of appellees, her paternal grandparents.

{¶ 5} In October 2006, Thomas McFall and Iva Collins married. Currently, though they remain married, they do not live together, and there are civil protection orders in effect between them.

{¶ 6} In August 2007, the court terminated the temporary custody of the Vinton County Court of Common Pleas over the child and granted custody to appellees. Iva McFall agreed to the custody order. Subsequently, Thomas McFall brought a complaint seeking visitation rights with the child, and appellant filed a motion to intervene in the complaint. The trial court dismissed appellant's motion to intervene on the basis that appellant had no standing to participate in the proceedings. In its order, the trial court stated, "Kathleen Adkins is not the biological grandmother of [the child]. * * * [A]s she is not a biological grandmother, she has no standing to intervene * * *." Appellant challenges the trial court's decision in the current appeal.

## II. Assignments of Error

{¶ 7} "1. The trial court erred in denying the appellant her constitutional rights to due process.

---

1. Iva Collins became Iva McFall upon her marriage to Thomas McFall in October 2006.

2. Thomas McFall is the appellant in a companion case to the case sub judice.

{¶ 8} "2. The trial court abused its discretion with prejudice to the appellant in failing to address the best interest of the minor child.

{¶ 9} "3. The trial court erred with prejudice to the appellant in adopting or relying on the incomplete report of the guardian-ad-litem.

{¶ 10} "4. The trial court erred by using the 'rubber stamp' solution in every issue brought before the trial court and failing to determine as fact, reports and/or statements made by VCCS and the legal representative of VCCS.

{¶ 11} "5. The trial court abused its discretion with prejudice to the appellant in denying or not addressing Adkins' request to be made party to the case.

{¶ 12} "6. The trial court abused its discretion with prejudice to the appellant in failing to address appellant's previous standing in loco parentis to the minor child.

{¶ 13} "7. The trial court abused its discretion to the prejudice of the appellant in failing to determine that the appellant has an interest in the welfare of the child.

{¶ 14} "8. The trial court abused its discretion to the prejudice of the appellant in failing to address the prior interaction and interrelationship between the appellant and the minor child.

{¶ 15} "9. The trial court erred in failing to recognize or address the companionship and visitation rights of a person related by affinity.

{¶ 16} "10. The trial court committed reversible error by granting the motion to dismiss where appellant alleged a set of facts that would entitle the plaintiff to relief."

{¶ 17} Initially, we note that as far as can be discerned from her brief, some of appellant's assignments of error, in whole or in part, pertain to the separate, underlying case regarding custody of the child and not to appellant's motion to intervene in Thomas McFall's visitation case. We do not have the record of the custody case before us, and therefore, we do not know the issues the trial court addressed. Our review is restricted to the record provided by the appellant to the court. See App.R. 12(A)(1)(b). "An appellate court is 'bound by the record before it and may not consider facts extraneous thereto.'" *Meek v. Cowman*, 4th Dist. No. 07CA31, 2008-Ohio-1123, 2008 WL 683972, at ¶ 16, quoting *Paulin v. Midland Mut. Life Ins. Co.* (1974), 37 Ohio St.2d 109, 112, 66 O.O.2d 231, 307 N.E.2d 908. Thus, to the extent that appellant's assignments of error pertain to issues of custody, we do not address them. Consequently, we overrule appellant's second, third, fourth, fifth, sixth, seventh, and eighth assignments of error.

{¶ 18} Appellant's ninth assignment of error, regarding her right to participate in visitation proceedings as a relative of the child's mother, hinges upon the issue of standing.

### III. Standard of Review

{¶ 19} "The question of standing is whether a litigant is entitled to have a court determine the merits of the issues presented." *Ohio Contrs. Assn. v. Bicking* (1994), 71 Ohio St.3d 318, 320, 643 N.E.2d 1088. "Whether established facts confer standing to assert a claim is a matter of law." *Portage Cty. Bd. of Commrs. v. Akron*, 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478, at ¶ 90. Appellate courts review questions of law under a de novo standard of review. *Skirvin v. Kidd*, 174 Ohio App.3d 273, 2007-Ohio-7179, 881 N.E.2d 914, at ¶ 14. Thus, as a preliminary matter and without deference to the trial court, we must determine whether appellant had standing to intervene in her son's complaint for visitation rights.

### IV. Legal Analysis.

{¶ 20} Three separate Ohio Revised Code sections govern nonparental visitation rights and minor children: R.C. 3109.11, 3109.051(B)(1) and 3109.12. R.C. 3109.11 applies "[i]f either the father or mother of an unmarried minor child is deceased." Because in the case at hand, both of the minor child's biological parents are living, R.C. 3109.11 clearly cannot be the foundation for appellant's standing. R.C. 3109.051(B)(1) applies in instances of "divorce, dissolution of marriage, legal separation, annulment, or child support proceeding that involves a child." Again, in the case sub judice, none of these conditions apply. Accordingly, for appellant to have standing in this matter, that standing must arise from the remaining R.C. 3109.12.

{¶ 21} R.C. 3109.12 states, "(A) If a child is born to an unmarried woman, the parents of the woman and any relative of the woman may file a complaint requesting the court of common pleas of the county in which the child resides to grant them reasonable companionship or visitation rights with the child. * * * (B) The court may grant the parenting time rights or companionship or visitation rights requested under division (A) of this section, if it determines that the granting of the parenting time rights or companionship or visitation rights is in the best interest of the child. * * * The marriage or remarriage of the mother or father of a child does not affect the authority of the court under this section to grant the natural father reasonable parenting time rights or the parents or relatives of the natural father or the parents or relatives of the mother of the child reasonable companionship or visitation rights with respect to the child."

{¶ 22} As required by R.C. 3109.12, Iva Collins was unmarried at the time the child was born. By virtue of her son's subsequent marriage to Iva, appellant argues that she became Iva's relative within the meaning of the nonparental visitation statutes. She argues that though she is not the biological grandmother of the child, she remains a relative for purposes of standing because the statutes also apply to persons related by affinity.

{¶ 23} When the child was born, appellant and her son had no legal relationship with either Iva or the child. Though the child lived with appellant after her birth in 2004, Thomas McFall did not marry Iva until 2006. When McFall married Iva, temporary custody of the child had already been granted to the Vinton County Department of Job and Family Services and the child had been placed with appellees, her paternal grandparents. Thus, appellant became the child's stepgrandmother only after the child's mother no longer had custody and the child was no longer residing in appellant's home. However, under R.C. 3109.12, "any relative of the woman" has standing to file a complaint for visitation. Therefore, if appellant is a relative of Iva within the context of R.C. 3109.12, she has standing to intervene in a complaint for visitation.

{¶ 24} Ohio courts have found that steprelations are "relatives" for the purposes of nonparental visitation statutes. *Goeller v. Lorence* addressed the meaning of the term within the context of R.C. 3109.11. "In R.C. 3109.11, the legislature has used broader language than the statutes interpreted by the above courts, using only the term 'relatives' with no modifiers * * *. By using the term 'relative', the legislature has not differentiated between relationships by consanguinity and relationships by affinity." Id., 9th Dist. No. 06CA008883, 2006-Ohio-5807, 2006 WL 3159406, at ¶ 16. See also *In re Sadie Elizabeth S.*, 6th Dist. No. F–05–028, 2006-Ohio-2928, 2006 WL 1580041 (standing did not arise as an issue when stepgrandparent moved for visitation rights under R.C. 3109.12). Additionally, in R.C. 3109.051(D), another of the three statute dealing with nonparental visitation rights, one of the factors to be considered is "[t]he prior interaction and interrelationships of the child with the child's parents, siblings, and other persons *related by consanguinity or affinity* * * *." (Emphasis added.) Consequently, the term "relative" in R.C. 3109.12 includes those persons related by affinity.

{¶ 25} Accordingly, because Iva McFall was unmarried at the time of the child's birth, and because appellant, as her mother-in-law, is a relative by affinity, we hold that she has standing to seek visitation under R.C. 3109.12. The trial court's decision to dismiss appellant's motion to intervene in Thomas McFall's complaint due to lack of standing was error. Thus, we sustain appellant's ninth

assignment of error. Appellant's remaining assignments of error are rendered moot by our decision.

Judgment affirmed in part
and reversed in part,
and cause remanded.

ABELE, P.J., concurs.

HARSHA, J., not participating.

ABELE, P.J., concurring.

{¶ 26} Appellant sought to intervene in this action with the goal of acquiring visitation rights with the minor child. At first glance, this request appears to extend beyond the traditional concept of familial visitation rights. Nevertheless, I agree with the principal opinion that the issue in the case sub judice falls under the Ohio General Assembly's more expansive view of the potential number of people who should, in certain situations and in the best interest of the child, be awarded visitation rights with a minor child. This expanded view appears to take into account the evolving and fragmented family structure. Sometimes a situation may arise when a child's best interest may not neatly align with the child's family tree. Courts, therefore, may examine a child's personal situation and fashion visitation orders that truly comport with the child's best interest. I hasten to add, however, that simply because appellant should be permitted to intervene in this matter, our decision today should not be construed as a comment on the merits of the underlying action. Whether the trial court should, in fact, award appellant visitation rights with the minor child is a matter that the court must fully examine and determine under the appropriate standard.