**In re R.V.**

[Cite as *In re R.V.*, 190 Ohio App.3d 313, 2010-Ohio-5050.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 2009–CA–107.

Decided Oct. 15, 2010.

Geyer, Herier & Frizzell Co., L.P.A., and Douglas W. Geyer, for appellant.

John H. Rion and Jon Rion, for appellee.

---

BROGAN, Judge.

{¶ 1} Appellant Cora Morrow appeals the decision of the Clark County Court of Common Pleas, Domestic Relations Division, Juvenile Section, denying her request for visitation privilege with her two grandchildren, X.V. and R.V. Morrow contends that the trial court incorrectly determined that it did not have jurisdiction to consider and award visitation rights to Morrow. The trial court improperly determined that under R.C. 3109.051, it did not have the jurisdiction to grant visitation rights to Morrow. For the following reasons, the judgment of the trial court will be reversed.

## I

{¶ 2} Travis Voorhees married Melissa Gates on September 18, 1998. They had two children, X.V., born May 13, 1999, and R.V., born January 30, 2002. On August 12, 2002, a few months after the birth of R.V., Melissa died. Two years later, on June 12, 2004, Travis married Jessica Voorhees. Jessica had an 11–year–old son from a previous relationship, and Travis later adopted him. All three children now live together with Travis and Jessica.

{¶ 3} After the death of Melissa, a myriad of events transpired, and those events worsened the relationship between Travis, Cora Morrow (Travis's mother), and Travis's former father-in-law, Gary Gates. While the relationships were deteriorating, Travis drastically decreased the number of visits between his children and Morrow and Gates. Gates and Morrow both filed their own complaints for companionship or visitation, requesting the ability to visit X.V. and R.V.

{¶ 4} The Clark County Court of Common Pleas, Domestic Relations Division, Juvenile Section, granted visitation rights to Gates, pursuant to R.C. 3109.11.

{¶ 5} The trial court found that Gates was entitled to visitation rights with his grandchildren, since he is the father of R.V. and X.V.'s deceased mother, Melissa Voorhees. The trial court also determined that since Morrow is the mother of Travis, the father of the children, and he is still alive, the court did not have jurisdiction to grant visitation to Morrow. It is from this determination that Morrow appeals.

## II

{¶ 6} Morrow puts forth one assignment of error, which states as follows:

{¶ 7} "The trial court failed to recognize that it does have jurisdiction to consider and award, if found to be in the best interest of the minor children, visitation to plaintiff/appellant, Cora Morrow, paternal grandmother."

{¶ 8} Morrow contends that the trial court erred in finding that she could not seek visitation privileges with her son's children under the provisions of R.C. 3109.11 because she was not a blood relative of the deceased parent, although she is related to the children by consanguinity.

{¶ 9} Voorhees argues that the legislature intended, under R.C. 3109.11, to treat relatives of the deceased parent differently from relatives of the living parent. Voorhees argues that if the legislature intended to include relatives by affinity in the statute, it would not have included the words "deceased parent" in the statute because the relatives of the deceased are related by affinity in every situation when the parties were married.

{¶ 10} The applicable statute that grants visitation to third parties is R.C. 3109.11, which states:

{¶ 11} "If either the father or mother of an unmarried minor child is deceased, the court of common pleas of the county in which the minor child resides may grant the parents *and other relatives of the deceased father or mother* reasonable companionship or visitation rights with respect to the minor child during the child's minority if the parent or other relative files a complaint requesting reasonable companionship or visitation rights and if the court determines that the granting of the companionship or visitation rights is in the best interest of the minor child." (Emphasis added.)

{¶ 12} The issue in this case is whether the paternal grandparents are considered relatives of the deceased mother and whether the legislature intended the paternal grandparents to have the right to seek visitation under R.C. 3109.11.

{¶ 13} Other districts in the state of Ohio have defined "relative" as a relationship through affinity or consanguinity. *Goeller v. Lorence,* Lorain App. No. 008883, 2006-Ohio-5807, 2006 WL 3159406, at ¶ 16. The Fourth District, following the logic of *Goeller,* also determined that "the term 'relative' * * * includes those persons related by affinity." *McFall v. Watson,* Vinton App. No. 667, 2008-Ohio-5205, 2008 WL 4456957, ¶ 16. Judge Rocco of the Eighth District has also weighed in on the definition of "relative," stating that "the term 'relative' includes persons related by consanguinity and persons related by affinity" and that "(r)elationships by affinity are generally those created by marriage, for example, the relationship of father- or mother-in-law * * *." *In re LaPiana,* Cuyahoga App. Nos. 93691 and 93692, 2010-Ohio-3606, 2010 WL 3042394, ¶ 78 (Rocco, P.J., dissenting on a separate issue).

{¶ 14} Other states have examined this issue and have come to the same conclusion as the state of Ohio. Indiana, in *White v. State* (2001), 756 N.E.2d 1057, 1061, declared, "The reasonable understanding of 'related to' include(s) relatives by both consanguinity and affinity." The state of Illinois determined that "a husband has the same relation by affinity to his wife's blood relatives as she has to them by consanguinity." *In re Schmidt* (1998), 298 Ill.App.3d 682, 691, 232 Ill.Dec. 938, 699 N.E.2d 1123. Louisiana also weighed in on relationships of affinity, and found that "[t]he doctrine of affinity grew out of the canonical maxim that the husband and wife are one. It is the relationship which arises, in consequence of marriage, between one spouse and the blood relatives of the other. Thus, the husband stands in the same degree of affinity to his wife's blood relatives as she stands to them by consanguinity, and vice versa." *State v. Ardoin* (2010), 35 So.3d 1065, 1068.

{¶ 15} In examining the language of R.C. 3109.11, we must also look at the intent of the legislature when they drafted the statute. In any situation in which children are involved, the legislature acts with the best interests of the child in mind. "By its plain language, R.C. 3109.11 is designed to serve the best interests of the child." *Goeller v. Lorence,* Lorain App. No. 008883, 2006-Ohio-5807, 2006 WL 3159406, at ¶ 14. We believe the legislature recognized that in some situations, a child of the deceased mother may have developed stronger emotional ties with the father's parents than with the deceased mother's parents and that it would be in the child's best interest to continue that relationship with visitation.

## III

{¶ 16} Morrow's assignment of error is sustained, and the judgment of the trial court is reversed. This case is remanded to the trial court to be determined consistent with the opinion of this court.

Judgment reversed
and cause remanded.

FROELICH, J., concurs separately.

GRADY, J., dissents.

FROELICH, Judge, concurring.

{¶ 17} I concur. The statute explicitly provides that the court may grant visitation to the relatives of the deceased parent—so the only possible question is whether the deceased parent's mother-in-law is a "relative." Since an "in-law" relationship is, by definition, not one of consanguinity, the appellee argues that

(1) the statute does not relate to visitation by individuals only related by affinity and (2) if it does, then it is not applicable because, upon the death of her daughter-in-law, Cora Morrow was no longer a mother-in-law and, therefore, not even related by affinity.

{¶ 18} It is "well settled that the term 'relative' includes persons related by consanguinity and persons related by affinity." *In re LaPiana,* Cuyahoga App. Nos. 93691 and 93692, 2010-Ohio-3606, 2010 WL 3042394, ¶ 78 (Rocco, P.J., dissenting on a separate issue). For example, in *In re F.D.,* Montgomery App. No. 23358, 2009-Ohio-4788, 2009 WL 2915618, with a fact pattern strikingly similar to appellant's case, such sophistry was not even raised when we addressed whether the trial court gave appropriate weight to the surviving father's wishes regarding the child's visitation with the deceased mother's relatives.

{¶ 19} The legislature in adopting R.C. 3109.11 could not have conceivably intended that a mother and grandmother would cease being a "relative" upon the death of her daughter-in-law; further, if that were its intent, it could have limited the statute to "relatives related by * * * consanguinity," as it did in, for example, R.C. 2107.52 (dealing with the death of a devisee or legatee).

---

GRADY, Judge, dissenting.

{¶ 20} I respectfully dissent from the decision of the majority.

{¶ 21} R.C. 3109.11 authorizes the common pleas court to grant a right of reasonable companionship or visitation with a minor child to "the parents and other relatives of the deceased father or mother" of the minor child upon their application. The right may be awarded over the opposition of the child's surviving parent.

{¶ 22} In the present case, the surviving father's own parents seek reasonable companionship or visitation with their two grandchildren, which their son denies them. The grandparents argue, and the majority holds, that R.C. 3109.11 authorizes a court to grant the grandparents a right of visitation because they are, or were, "other relatives" by affinity of the deceased mother of the two children.

{¶ 23} R.C. 3109.11 does not define the term "other relatives" with respect to whether it applies to relatives of the deceased parent by affinity or by consanguinity, the latter meaning the relationship of persons of the same blood or origin. We are therefore presented with an issue of statutory construction. I believe that the relief R.C. 3109.11 allows is limited to relatives of the deceased parent by consanguinity only.

{¶ 24} When statutes or terms in them are ambiguous or inexact, courts apply textual canons from which the correct meaning may be found by inference. The canon noscitur a sociis interprets a general term to be similar to more specific terms in a series. As it appears in R.C. 3109.11, "other relatives" is a general term that is part of a series that includes the more specific term "parents * * * of the deceased father or mother." The relationship between those parents and their deceased child is a relationship by consanguinity. The term "other relatives" should therefore likewise be interpreted to refer to relatives of the deceased father or mother by consanguinity, not by affinity.

{¶ 25} The common law generally defers to parental authority in matters of child custody and visitation. By placing a limit on the operation of the common law, R.C. 3109.11 is in derogation of the common law. *U.S. Promotion Co. v. Anderson* (1919), 100 Ohio St. 58, 125 N.E. 106. The general rule is that statutes in derogation of the common law should be strictly construed. Id.; *Ohio Dept. of Human Servs. v. Eastman* (2001), 145 Ohio App.3d 369, 763 N.E.2d 193.

{¶ 26} The majority instead construes R.C. 3109.11 liberally, applying it in the present case to allow the children's grandparents to obtain a right of visitation because they are relatives of the deceased parent by affinity. R.C. 3109.11 is a remedial statute, and per R.C. 1.11, "[r]emedial laws and all proceedings under them shall be liberally construed in order to promote their object and assist the parties in obtaining justice." However, R.C. 1.11 further provides, "[T]his section does not require a liberal construction of laws affecting personal liberty." A parent's right to determine matters involving the custody of and visitation with his minor child implicates the parent's liberty interest. *Troxel v. Granville* (2000), 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49. Therefore, as applied to the facts of the present case, R.C. 3109.11 ought not be given the liberal construction the majority affords it.

{¶ 27} "There is no authority under any rule of statutory construction to add to, enlarge, supply, expand, extend, or improve provisions of a statute to meet a situation not provided for." *State ex rel. Foster v. Evatt* (1944), 144 Ohio St. 65, 29 O.O. 4, 56 N.E.2d 265, paragraph eight of the syllabus. In *Carrel v. Allied Prods. Corp.* (1997), 78 Ohio St.3d 284, 287, 677 N.E.2d 795, the Supreme Court wrote: "According to principles of statutory construction, the General Assembly will not be presumed to have intended to abrogate a common-law rule unless the language used in the statute clearly shows that intent. *State ex rel. Morris v. Sullivan* (1909), 81 Ohio St. 79, 90 N.E. 146, paragraph three of the syllabus. Thus, in the absence of language clearly showing the intention to supersede the common law, the existing common law is not affected by the statute, but continues in full force. *Id.*"

{¶ 28} Nothing in R.C. 3109.11 portrays an intention of the General Assembly to confer a right of visitation with a minor child on persons who are "other relatives of the [child's] deceased father or mother" by affinity. Indeed, the law gives little, if any, recognition to relationships by affinity. (See, e.g., R.C. 2103.06, the statute of descent and distribution.) For the reasons discussed above, neither should R.C. 3109.11 be extended to apply to affinity relationships, at least by judicial construction. If that is to be done, a more specific legislative expression is needed.

{¶ 29} R.C. 3109.11 protects the relationship between a minor child and the parents or other relatives of the minor child by consanguinity, when the parent of the child through whom the relationship was established is deceased, from the arbitrary or spiteful conduct of the surviving parent of the minor child who would cut off contact between his child and those other persons. The law enforces the right of contact that the deceased parent is presumed to have wished to preserve. Travis Voorhees's decision to cut off contact between his two children and his own parents may or may not be arbitrary or spiteful, but it is not subject to invasion by the law in order to avoid the consequences of his decision, at least not pursuant to R.C. 3109.11 as the General Assembly wrote it.

{¶ 30} As a final matter, though I would affirm the judgment of the trial court, I would not do so on the basis that the trial court found, which is that it lacks jurisdiction to grant the relief pursuant to R.C. 3109.11 that was sought. R.C. 3109.11 confers jurisdiction on the court to grant relief pursuant to the terms of that section. Being outside the coverage of those terms, appellant, Cora Morrow, instead lacks standing to seek that relief. The same result obtains.