## In re K.P.R.

[Cite as *In re K.P.R.*, 197 Ohio App.3d 193, 2011-Ohio-6114.]

Court of Appeals of Ohio,
Twelfth District, Warren County.

No. CA2011–03–023.

Decided Nov. 28, 2011.

Rittgers & Rittgers and Renee L. Crist, for appellee.

Jeffrey E. Richards Law Office and Jeffrey E. Richards, for appellant.

Tyler P. Webb, guardian ad litem.

POWELL, Presiding Judge.

{¶ 1} The biological father of a 15–year–old boy asks this court to overturn a decision of the Warren County Juvenile Court granting the stepfather's request to have a set schedule of visitation with the boy after the boy's mother died suddenly. We affirm the juvenile court's visitation decision, finding that the juvenile court had jurisdiction to consider the visitation request and that the father waived his other arguments when he failed to object to the magistrate's decision, but vacate the juvenile court's property order as being without jurisdiction.

{¶ 2} K.P.R. lived with his mother and stepfather, and the father exercised parenting time. The boy's parents were never married, and the stepfather was

part of the child's life for 13 years and was married to the child's mother for 11 years. The mother died suddenly in August 2010, while K.P.R. was visiting with the father. The boy remained in the father's home.

{¶ 3} In September 2010, the stepfather filed a motion in juvenile court for custody or for visitation. The juvenile court magistrate issued a 14–page decision that indicated that the stepfather was not seeking custody at that time but wanted a set schedule for visitation. The magistrate noted that the father said he did not oppose visitation but didn't want a set schedule and wanted to control the amount of visitation. The magistrate awarded visitation for the stepfather in conformance with the juvenile court's "Basic Parenting Schedule, Basic I."

{¶ 4} While no order is part of the record provided to this court, it appears that the court permitted the father to take some of K.P.R.'s belongings from the stepfather's home after the mother's death. The father also removed furniture from K.P.R.'s room at the same time. The magistrate ordered the father to return to the stepfather the bed, mattress, box springs, dresser with mirror, and nightstand.

{¶ 5} The juvenile court adopted the decision on the same day it was filed. Neither party objected to the magistrate's decision. This appeal was taken by the father, raising six assignments of error for our review.

{¶ 6} The first question that this court must address is the consequence of the father's failure to file objections to the magistrate's decision. The father's appellate counsel argues that the father was precluded from filing objections with the juvenile court because the juvenile court adopted the magistrate's decision. The juvenile rules, as outlined below, clearly indicate otherwise. Moreover, the magistrate's decision contained a number of paragraphs at the end of the decision that outlined the procedures under Juv.R. 40.

{¶ 7} A party may file written objections to a magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14–day period as permitted by Juv.R. 40(D)(4)(e)(i). Juv.R. 40(D)(3)(b)(i); see comparable rules of Civ.R. 53 and Crim.R. 19. A magistrate's decision is not effective unless adopted by the court. Juv.R. 40(D)(4)(a). If no timely objections are filed, the court may adopt a magistrate's decision, unless it determines that there is an error of law or other defect evident on the face of the magistrate's decision. Juv.R. 40(D)(4)(c).

{¶ 8} The court may enter a judgment either during the 14 days permitted by Juv.R. 40(D)(3)(b)(i) for the filing of objections to a magistrate's decision or after the 14 days have expired. Juv.R. 40(D)(4)(e)(i). If the court enters a judgment during the 14 days permitted by Juv.R. 40(D)(3)(b)(i) for the filing of objections, the timely filing of objections to the magistrate's decision operates as an

automatic stay of execution of the judgment until the court disposes of those objections and vacates, modifies, or adheres to the judgment previously entered. Id.

{¶ 9} Juv.R. 40(D)(3)(b)(iv) provides: "Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion * * * unless the party has objected to that finding * * * as required by Juv.R. 40(D)(3)(b)." This waiver under the rule embodies the long-recognized principle that the failure to draw the trial court's attention to possible error when the error could have been corrected results in a waiver of the issue for purposes of appeal. *In re C.P.*, Brown App. No. CA2010–12–025, 2011-Ohio-4563, 2011 WL 4012400.

{¶ 10} This court previously ruled that unless the appellant argues a "claim of plain error," the appellant has waived the claimed errors not objected to below. See *State v. Shie*, Butler App. No. CA2007–02–038, 2008-Ohio-350, 2008 WL 296395, ¶ 45 (this court has construed a similar provision in Civ.R. 53 literally and found that where a party fails to expressly raise a claim of plain error on appeal, we need not consider whether plain error exists); *In re D.R.*, Butler App. No. CA2009–01–018, 2009-Ohio-2805, 2009 WL 1655409, ¶ 30 (appellant did not specifically object to the magistrate's foregoing finding and does not claim plain error here and is thereby precluded from raising this issue on appeal); *Allgeier v. Allgeier*, Clinton App. No. CA2009–12–019, 2010-Ohio-5313, 2010 WL 4340650, ¶ 22–23 (by failing to raise the issue in his objection, or argue plain error in his brief, appellant is prohibited from challenging the court's custody determination for the first time on appeal); *In re C.P.*, 2011-Ohio-4563, 2011 WL 4012400, at ¶ 35.

{¶ 11} Accordingly, the father has waived most, but not all, of his assignments of error by failing to object to the magistrate's decision. Two of the father's assignments of error—the first and sixth—challenge the subject-matter jurisdiction of the juvenile court, and the fifth assignment of error will be incorporated into the first assignment of error. The issues raised in those assignments will be discussed below.

{¶ 12} Assignment of Error No. 1:

{¶ 13} "The trial court erred in not dismissing the stepfather's motion for custody."

{¶ 14} In this assignment of error, the father argues that the juvenile court did not have jurisdiction over a case filed under the nonparent-visitation statute of R.C. 3109.11 and because the stepfather originally requested custody, jurisdiction did not extend to issues of visitation only.

{¶ 15} It is axiomatic that subject-matter jurisdiction cannot be waived, cannot be conferred upon a court by agreement of the parties, and may be the basis for sua sponte dismissal. *Carroll Cty. Bur. of Support v. Brown* (Nov. 6, 2001), Carroll App. No. 00AP0742. Lack of subject-matter jurisdiction is not a waivable defense and may be raised for the first time on appeal. Id. Subject-matter jurisdiction focuses on the court as a forum and on the case as one of a class of cases, not on the particular facts of a case or the particular tribunal that hears the case. Id.

{¶ 16} The stepfather filed a motion for custody or for parenting time. The father argues that the juvenile court is a court of limited jurisdiction, possessing only those powers the Ohio General Assembly conferred upon it. Section 4(B), Article IV of the Ohio Constitution. The father's argument principally relies on a statute and an Ohio Supreme Court case.

{¶ 17} Specifically, the father cites R.C. 2151.23, which states that a juvenile court has jurisdiction to determine the custody of any child not a ward of another court of this state. He also relies on the Ohio Supreme Court case of *In re Gibson* (1991), 61 Ohio St.3d 168, 573 N.E.2d 1074. In *Gibson*, a grandfather sought visitation with a child whose married parents were living but had denied him visits. The *Gibson* grandfather tried unsuccessfully to argue that R.C. 2151.23 permitted a request for visitation to be addressed under the umbrella of custody matters.

{¶ 18} The *Gibson* court said that visitation and custody are related but distinct concepts. The *Gibson* court found that in a case in which a nonparent (grandparent) sought only visitation, a juvenile court may not determine that issue pursuant to its authority to determine custody of children under R.C. 2151.23(A)(2). Id. at syllabus.

{¶ 19} The *Gibson* court further noted three statutes that permit nonparental visitation: R.C. 3109.051 (nonparent visits may be granted in cases involving divorce, dissolution of marriage, legal separation, annulment, or child-support proceedings that involve a child) and 3109.11 (nonparent visits may be granted in cases involving persons related to a child's deceased parent); and "[i]n one departure from the 'disruptive precipitating event' principle, R.C. 3109.12 has been added to allow grandparental visitation in the case of 'a child * * * born to an unmarried woman.' " Id., 61 Ohio St.3d at 170, 573 N.E.2d 1074.

{¶ 20} The *Gibson* court found that the circumstances in its case did not meet the criteria of R.C. 3109.12 and that no disruptive precipitating event had occurred in its case to fall under 3109.11 or 3109.051.

{¶ 21} In the case at bar, *Gibson* does not preclude the juvenile court from hearing the stepfather's motion for visitation, because this case involves a

disruptive precipitating event, namely, the mother's death. The juvenile court recognized that R.C. 3109.11 gave it the authority to consider the stepfather's request for visitation.

{¶ 22} R.C. 3109.11 states: "If either the father or mother of an unmarried minor child is deceased, the court of common pleas of the county in which the minor child resides may grant the parents and other relatives of the deceased father or mother reasonable companionship or visitation rights with respect to the minor child during the child's minority if the parent or other relative files a complaint requesting reasonable companionship or visitation rights and if the court determines that the granting of the companionship or visitation rights is in the best interest of the minor child. In determining whether to grant any person reasonable companionship or visitation rights with respect to any child, the court shall consider all relevant factors, including, but not limited to, the factors set forth in division (D) of section 3109.051 of the Revised Code. Divisions (C), (K), and (L) of section 3109.051 of the Revised Code apply to the determination of reasonable companionship or visitation rights under this section and to any order granting any such rights that is issued under this section."

{¶ 23} If the stepfather qualifies as a "relative" under R.C. 3109.11, he could ask the juvenile court in this case to entertain his request for visitation. The father challenges in his fifth assignment of error whether the stepfather has standing as a relative under R.C. 3109.11. Since the issue of whether the stepfather is a relative capable of using R.C. 3109.11 to invoke the jurisdiction of juvenile court, we will address the issue of whether the stepfather is a relative for purposes of the statute. See *State ex rel. Jones v. Suster* (1998), 84 Ohio St.3d 70, 77, 701 N.E.2d 1002, fn. 4 (the term "jurisdiction" has different meanings depending upon the context in which it is used and the subject matter to which it is directed; standing is jurisdictional only in limited cases involving administrative appeals, where parties must meet strict standing requirements in order to satisfy the threshold requirement for the administrative tribunal to obtain jurisdiction).

{¶ 24} The Ninth Appellate District in *Goeller v. Lorence*, Lorain App. No. 06CA008883, 2006-Ohio-5807, 2006 WL 3159406, found that by using the term "relative," the legislature in R.C. 3109.11 had not differentiated between relationships by consanguinity and relationships by affinity. Id. at ¶ 16; Black's Law Dictionary (8th Ed.2004) 63, 322 ("affinity," in part, is a relationship by marriage, and "consanguinity," in part, is relationship of persons of the same blood or origin); see *McFall v. Watson*, 178 Ohio App.3d 540, 2008-Ohio-5204, 899 N.E.2d 158; *In re R.V.*, 190 Ohio App.3d 313, 2010-Ohio-5050, 941 N.E.2d 1216, ¶ 13–15 (paternal grandmother was relative of grandchildren's deceased mother by affinity and could seek visitation under visitation statute); *In re LaPiana,*

Cuyahoga App. Nos. 93691 and 93692, 2010-Ohio-3606, 2010 WL 3042394 ("relative" includes persons related by consanguinity and persons related by affinity, and relationships by affinity are generally those created by marriage, such as father-in-law or mother-in-law, or stepparent [Rocco, P.J., dissenting on a separate issue] ); see *In re Sadie Elizabeth S.*, Fulton App. No. F–05–028, 2006-Ohio-2928, 2006 WL 1580041, ¶ 78 (standing issue did not arise when stepgrandparent moved for visitation).

{¶ 25} The stepfather here is related by affinity, as the spouse of the child's mother. The father now argues that the stepfather is a former relative because the stepfather's wife is deceased. This argument is rejected on the basis of *Goeller*, which indicated that the widow of the child's parent who remarried was still related by affinity, since that person was still the deceased parent's widow. See id. at ¶ 12, 13, (death did not sever relationship by affinity with spouse; stepparent had standing as a relative to request visitation even though he remarried after the death of his spouse, the child's mother). In this case, the stepfather is the deceased parent's widow. Therefore, the stepfather had standing to move for visitation.

{¶ 26} Accordingly, the stepfather is a relative who could request visitation under R.C. 3109.11, and the juvenile court had jurisdiction to consider the motion. The father's first and fifth assignments of error are overruled.

{¶ 27} Assignment of Error No. 2:

{¶ 28} "The trial court erred in granting parenting time pursuant to Ohio Revised Code § 3109.51(d)."

{¶ 29} Assignment of Error No. 3:

{¶ 30} "The court did not give the parent's wishes sufficient weight in allowing parenting time with a stepfather."

{¶ 31} Assignment of Error No. 4:

{¶ 32} "The court erred in the amount of parenting time it awarded to the stepfather."

{¶ 33} Based on the father's failure to raise these issues in objections to the magistrate's decision and his failure to claim plain error on appeal, the father waives any error for his second, third, and fourth assignments of error, and those assignments of error are overruled.

{¶ 34} Assignment of Error No. 6:

{¶ 35} "The juvenile court erred in deciding property issues."

{¶ 36} The father argues that the juvenile court had no jurisdiction to determine "property settlements" in this visitation case. This assignment of error is based on the juvenile court's order that the father return furniture he

had removed from the child's room at the mother and stepfather's home after the death of the mother.

{¶ 37} The father again cites R.C. 2151.23, which defines juvenile court jurisdiction, for his argument that the court had no authority to order that property be turned over to him in the first place and also did not have jurisdiction to order that the furniture be returned to the stepfather.

{¶ 38} The original order is not part of the record provided to this court. However, we rely on two cases to assist this court in finding that the juvenile court did not have jurisdiction over the property at issue.

{¶ 39} In *Miller ex rel. Lafountain v. McMichael,* Paulding App. No. 11–03–08, 2003-Ohio-6713, 2003 WL 22939494, ¶ 11, the appellant asked the juvenile court to determine whether compensation for the use of decedent's furniture was an asset of decedent's estate. The Third Appellate District found that the probate court had exclusive jurisdiction to decide questions of title to claimed assets of the estate and that the appellant's additional requests had "to do with the disposition of [deceased's] property, and, thus, [were] matters for the probate court to determine."

{¶ 40} The appellate court said that there was no authority granting a juvenile court jurisdiction to determine matters of a decedent's estate. "Thus, while the Paulding County Probate Court would have had jurisdiction to determine whether Appellee's support arrearages were an asset of Miller's estate, the Paulding County Juvenile Court lacked such jurisdiction. Accordingly, the judgment in this case must be vacated." (Footnote omitted.) Id. at ¶ 12.

{¶ 41} *In re Gerken* (Nov. 9, 1990), Wood App. No. WD–90–9, 1990 WL 174324, the Sixth Appellate District did not find that it was "within a juvenile court's jurisdiction to order that the personal property of an abused child, held by another, be returned to such child. A cause of action for wrongfully held property, while certainly recognized as a valid claim for which relief can be granted in this state, must be brought in the court having jurisdiction over such action."

{¶ 42} In the case at bar, we cannot locate any authority giving the juvenile court jurisdiction to order the disposition of property from the mother and stepfather's home. The father's sixth assignment of error is sustained, and the juvenile court's order to return the furniture to the stepfather is vacated.

{¶ 43} The judgment is affirmed as to the juvenile court's visitation order and vacated as to the order requiring the father to return furniture to the stepfather.

Judgment affirmed in part
and vacated in part.

RINGLAND and HENDRICKSON, JJ., concur.