[Cite as *Youngstown v. Huffman*, 2011-Ohio-4753.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| CITY OF YOUNGSTOWN, | ) | |
| | ) | CASE NO. 10 MA 72 |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| HENRY J. HUFFMAN, | ) | |
| | ) | |
| DEFENDANT-APPELLEE . | ) | |

CHARACTER OF PROCEEDINGS:         Civil Appeal from Common Pleas
Court, Case No. 08 CV 4594.

JUDGMENT:         Reversed and Remanded.

APPEARANCES:
For Plaintiff-Appellant:         Attorney Anthony Farris
Law Director
26 S. Phelps Street
Youngstown, OH 44503

For Defendant-Appellee:         Attorney Damian DeGenova
Attorney Edward Czopur
DeGenova, Frederick, Vouros
& Yarwood
The Liberty Building
42 N. Phelps Street
Youngstown, OH 44503

JUDGES:
Hon. Mary DeGenaro
Hon. Cheryl L. Waite
Hon. Joseph J. Vukovich

Dated: September 16, 2011

DeGenaro, J.

{¶1} Plaintiff-Appellant, City of Youngstown, appeals the decision of the Mahoning County Court of Common Pleas that found in favor of Defendant-Appellee, Henry J. Huffman, following a bench trial, denying the City's claim to recover the cost of demolition of Huffman's property. First, the City contends the trial court erred as a matter of law when it found that the City must comply with the notice procedures of Youngstown Codified Ordinance 1525.02 when it determined that the condition of Huffman's property was an emergency, and razed the building pursuant to Youngstown Codified Ordinance 1525.05. And second, the City contends it was not required to prove procedural compliance with the ordinance in order to recover demolition costs. The City's assignment of error is meritorious for two reasons.

{¶2} First, the trial court erred in finding as a matter of law that regardless of how the City characterized the condition of the property, Youngstown Codified Ordinances 1525.02 and 1525.05 require notice to the owner before the property can lawfully be demolished and the City can recover those costs. When the City characterizes the condition of a building as a safety issue, notice pursuant to Youngstown Codified Ordinance 1525.02 must be given. But when the City characterizes the condition of a building as an emergency, Youngstown Codified Ordinance 1525.05 provides that notice is not required.

{¶3} Second, the trial court's decision that the City cannot recover the demolition costs from Huffman is against the manifest weight of the evidence. The record contains competent, credible evidence that the City categorized the condition of Huffman's property as an emergency. And it appears that the trial court made that finding, but nonetheless concluded that finding was immaterial, reasoning incorrectly that emergency demolitions still required notice.

{¶4} We hold that the City must demonstrate that the demolition of Huffman's

property was lawful in order to recover those costs pursuant to R.C. 715.261. Because the City determined that the condition of Huffman's property was an emergency, Youngstown Codified Ordinance 1525.05 permitted the City to raze the building without providing notice. Therefore, the City lawfully demolished the property, and can recover the cost of demolition from Huffman pursuant to R.C. 715.261. Accordingly, the judgment of the trial court is reversed, and the case remanded for the trial court to enter judgment in favor of the City.

### Facts and Procedural History

{¶5} Huffman has owned the house located at 25 North Center Street, Youngstown, Ohio since May 11, 1992. On June 12, 2006, the City's Department of Public Works Housing and Demolition sent Huffman a letter via certified mail informing him that his property was in violation of Housing Code 85226. This notice was returned to the sender, not deliverable as addressed.

{¶6} On July 27, 2006, a fire occurred in Huffman's house. The Youngstown Fire Department's report stated that the "[h]ouse was vacant and open. Neighbors stated people have been going in and out. House should be brought down. Housing on scene stated they would take it down soon. * * * Multiple sets thru out the house on more than one floor." On July 28, 2006, the Fire Chief sent Huffman a letter by regular mail to 25 North Center Street, which was the address determined for Huffman through a title search and a search of the auditor's website. The letter explained, "[d]ue to the severity of the fire, my office has made a determination that the remaining structure must be demolished. Therefore, the City of Youngstown Demolition Department has been notified to proceed expeditiously in this matter as it is a *safety* issue. You will be responsible for the costs involved." (emphasis added) This letter was also returned to sender as undeliverable at that address.

{¶7} On January 19, 2007, the City's Department of Public Works, Housing and Demolition sent letters to all five utilities requesting that service be removed from 25 North Center Street because it was "being processed for *emergency* demolition",

and the Division of Building Inspection issued a permit valid for thirty days for the demolition of the dwelling. (emphasis added) According to the City's witness, the City began demolition on that date, but the Environmental Protection Agency stopped the demolition. The EPA ordered asbestos testing and abatement for the property, and then authorized demolition for July 13, 2007.

{¶8} On November 24, 2008, the City filed a complaint alleging damages of $27,352.50 with statutory interest, plus court costs against Huffman for the demolition expenses. On March 10, 2009, Huffman filed an answer, asserting inter alia, that the City did not have the right to perform the demolition, as well as the affirmative defenses that the City failed to comply with the notice requirements of relevant City ordinances and Ohio Revised Code Sections, and failed to provide Huffman with an opportunity to repair any alleged violations. On February 17, 2010, a trial was held before the magistrate.

{¶9} Jean Schaefer, Rehab Assistant for the City of Youngstown, was the only witness to testify. Her job involved maintaining the City's files on demolition cases, including the demolition of Huffman's property. The damages claimed consisted of the demolition charge of $1,955, the two asbestos abatement charges of $16,950 and $8,045, and the remaining charges were for a title search and the asbestos testing.

{¶10} Schaefer did not receive a response from Huffman to the June 12, 2006 notice, and no party made any attempt to remedy the condition of the house, which she said was "*in very poor condition.*" (emphasis added) She also testified that her records reflected no contact from Huffman subsequent to the activities documented in her file.

{¶11} Regarding locating Huffman, Schaefer testified that the only efforts made to find Huffman's address to send the notices were the title search and searching the auditor's website. The City utilized the tax duplicate for notices unless another address was given to it. Schaefer said that if the City did a regular condemnation, it

sent notice via certified and regular mail, but when it had a fire notice from the fire department, the City did not send notice. She explained that although she was now aware that Huffman was an employee of the Youngstown Health Department, she knew him as Jamie and had not previously connected him as Henry J. She had realized that Huffman was employed by the City a month prior, although she had known him for probably a couple years. She further explained that she probably did not know him in July of 2006 or July of 2007.

{¶12} Schaefer testified that the ordinance that the City followed was Youngstown Codified Ordinance 1525.05, the emergency ordinance. Schaefer agreed that this ordinance was not the only section the City used when determining whether to raze a house but explained that 1525.05 was the only section the City used for fires or if a house was collapsing.

{¶13} Schaefer agreed that prior to the fires, her assessment of the condition of the house was based on the fact that the grass exceeded eight inches and no paint was left on the house.

{¶14} Regarding the July 28, 2006 notice from the Fire Chief, when asked, "So it was a safety issue?" Schaefer replied, "Yes." Schaefer stated that "*it wasn't an emergency, it was a safety issue, but that safety issue escalated.*" (emphasis added) She explained that the safety issue escalated due to numerous calls from the Youngstown Police Department because of vagrants occupying the house and setting small fires. Schaefer said that the safety issue kept escalating, and then the City had to try to find funding to perform the demolition.

{¶15} Schaefer explained that the City did not demolish Huffman's house until July of 2007 because of a lack of funding. She later testified that the City began demolition on January 19, 2007, but the EPA halted the demolition that day, and then extensive asbestos testing and abatement occurred before the final demolition in July of 2007. She agreed that the City completed the final demolition almost immediately after the EPA authorized it. She also testified that the City sent out letters dated

January 19, 2007, requesting that the utilities to the property be disconnected. Those letters, which were stipulated to by the parties and admitted into evidence, stated that the property was being processed for *emergency* demolition. (emphasis added)

**{¶16}** Schaefer testified that the permit for demolition from January 19, 2007 was the only permit for demolition of the house; that the City did not issue more than one permit per building because the permit was sent to the county for the auditor. This permit was unsigned; Schaefer explained that it was an internal permit used for the City's street department to begin demolition. Schaefer said that the thirty day limit was mostly used for private demolitions. Demolitions issued to the street department were usually done within the thirty days. However, the City received the stop order from the EPA and it did not reissue permits because that would interfere with the accounting for the county, so usually the City would change the dates on the permit.

**{¶17}** After the close of Schaefer's testimony, counsel for Huffman asked the trial court to take judicial notice of Youngstown Codified Ordinance 1525.02, without objection from counsel for the City. Huffman's counsel argued: 1) that Youngstown Codified Ordinance 1525.05 addresses emergency demolition but "not necessarily fire demolition," that section 1525.02 addresses the notice requirements for non-emergency demolitions, and that 1525.02 requires that the City first perform a diligent search for the owner of the property; 2) that the City did a title search and reviewed the auditor's website, but that the City could have located him through a diligent search since Huffman worked for the City; 3) that the ordinance states that after the search, notice can be made through certified mail, which did not occur; and, 4) that the building permit to demolish Huffman's house was not signed.

**{¶18}** The magistrate's decision found in favor of Huffman with respect to the City's claim for demolition costs and the City filed objections. On June 2, 2010, the trial court overruled the City's objections, finding the City's claim for damages failed and granted judgment in favor of Huffman, stating in pertinent part:

**{¶19}** "On June 12, 2006, the City sent notice to [Huffman] of code violations

regarding the house not being painted and the grass not being cut. Although this notice was sent via certified mail, it was not related to any of the 'emergency' safety issues subsequently raised by the City. This notice of June 12, 2006 was returned as 'undeliverable at that address.'

{¶20} "The witness for the City admitted that when the letter of July 28, 2006 was sent by regular mail, the condition of the property was a 'safety concern' and that subsequent to that letter the issues with the property evolved into an emergency. Regardless of such categorizations, the July 28, 2006 letter referring to the safety/fire hazards and demolition was sent regular mail * * *. Subsequently, no notice of fire hazards, safety issues, or demolition was ever sent by certified mail to the last known address of the property owner. Moreover, there was no evidence presented at trial that notice of demolition was ever conspicuously posted on the property. Both certified mail and conspicuous posting of notice at the property are explicitly required by Ordinance 1525.05. In this case, the City did neither. As such, service of notice of the fire hazard and demolition was ineffective and insufficient as required by City Ordinance 1525.02. Consequently, the City's claim against the Defendant for damages fails."

## Ordinance Notice Requirements

{¶21} The City asserts as its sole assignment of error:

{¶22} "The hearing court erred as a matter of law in treating compliance with the requirements of Youngstown City Ordinance 1525.02 as a prerequisite to collecting costs of abating dangerous property conditions."

{¶23} The City raises four arguments, the first of which is that it does not need to establish procedural compliance with the statute in order to collect damages from the demolition. Second, the City argues that Huffman failed to preserve his Due Process challenge by asserting it as an affirmative defense, rather than by asserting it in a counterclaim or a complaint for wrongful demolition. Third, the City argues that the trial court incorrectly interpreted the demolition ordinances; and finally, that

Huffman's property was demolished because the condition of the property was an emergency. For clarity of analysis we will address these arguments out of order.

{¶24} The City first argues that the trial court erroneously interpreted the notice requirements in the two demolition ordinances. Specifically, that the trial court erred when it held that Youngstown Codified Ordinance 1525.05 requires certified mail service and conspicuous posting of notice at the property. The City contends that the notice procedures in Youngstown Codified Ordinance 1525.02 do not apply when the City determines the condition of the property is an emergency, and razes the building pursuant to Youngstown Codified Ordinance 1525.05

{¶25} "[I]nterpretation of a city's ordinance presents a question of law that must be reviewed de novo." *Moulagiannis v. City of Cleveland Bd. of Zoning Appeals*, 8th Dist. No. 84922, 2005-Ohio-2180, at ¶10. Under the de novo standard, appellate courts review questions of law without deference to the trial court's determinations. *Skirvin v. Kidd*, 174 Ohio App.3d 273, 2007-Ohio-7179, 881 N.E.2d 914, at ¶14.

{¶26} Youngstown Codified Ordinance 1525.02 states in pertinent part:

{¶27} "a) The Bureau of Building and Housing Code Administration or, in the event of an emergency, the Fire Chief, shall examine every building or structure reported as dangerous, unsafe structurally or constituting a fire hazard; and he shall cause the report to be filed in a docket of unsafe structures, the nature and estimated amount of damages, if any, caused by collapse or failure.

{¶28} "(b) If the person to whom such notice and order is addressed cannot be found within the City after diligent search, then such notice and order shall be sent by certified mail to the last known address of such person. A copy of the notice shall be posted in a conspicuous place on the premises to which it relates. Such mailing and posting shall be deemed adequate service."

{¶29} Youngstown Codified Ordinance 1525.05 states in pertinent part:

{¶30} "a) In case there shall be, in the opinion of the Bureau of Building and Housing Code Administration or, *in the event of an emergency*, the Fire Chief, *actual*

*and immediate danger* of failure or fire or collapse of a building or structure or any part thereof so as to endanger life or property, he shall cause the necessary work to be done to render the building or structure or part thereof temporarily safe. If the building or structure is in a state of decay such that it is impracticable to be repaired, he may order the building or structure razed or demolished. *Action may be taken whether the procedure elsewhere in this chapter has been instituted or not.*" (emphasis added)

{¶31} Taken together, when the City finds a building to be structurally unsafe or a fire hazard and the City cannot locate the building's owner after a diligent search, then notice in the form of certified mail and conspicuous posting at the property is required by Youngstown Ordinance 1525.02. However, under Youngstown Codified Ordinance 1525.05, when a building is in a state of emergency, such that there is "actual and immediate danger of failure or fire or collapse of [it] or any part thereof so as to endanger life or property," then the City may take action "whether the procedure elsewhere in this chapter has been instituted or not." Therefore, in emergency situations, the City may act to demolish a building without following the notice procedures found in Youngstown Codified Ordinance 1525.02.

{¶32} The trial court found that regardless of whether the City categorized the property as a 'safety concern' or an 'emergency' "[b]oth certified mail service and conspicuous posting of notice at the property are explicitly required by Ordinance 1525.05. In this case, the City did neither. As such, service of notice of the fire hazard and demolition was ineffective and insufficient as required by City Ordinance 1525.02."

{¶33} As a matter of law, the characterization of the property's condition does matter. Notice by certified mail and conspicuous posting on the property is not required if the City proceeded with demolition pursuant to Youngstown Codified Ordinance 1525.05 because it characterized the property as an emergency. Conversely, notice by certified mail and conspicuous posting on the property is required if the City proceeded with demolition pursuant to Youngstown Codified Ordinance 1525.02 because it characterized the property as a safety issue. Thus, the

trial court erred when it found that an emergency demolition pursuant to Youngstown Codified Ordinance 1525.05 requires notice by certified mail and conspicuous posting on the property pursuant to Youngstown Codified Ordinance 1525.02. This argument of the City is meritorious.

### Emergency Demolition

{¶34} Second, we must review the factual issue of whether the City demolished the property because it was a 'safety concern' or an 'emergency'. How the City characterized the condition of the property dictates what notice, if any, the City was required to provide Huffman before it razed the building. The City argues that because it considered the condition of the property to be an emergency, it razed the building pursuant to Youngstown Codified Ordinance 1525.05, which does not require notice prior to demolition in that situation.

{¶35} Because the determination of whether the City performed the demolition in response to an emergency is a question of fact, we review the trial court's judgment under a manifest weight of the evidence standard. *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273. Pursuant to a civil manifest weight of the evidence standard of review, a reviewing court should defer to the judgment of the trial court in factual determinations, and "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court." *Creative Concrete v. D&G Pools*, 7th Dist. No. 07 MA 163, 2008-Ohio-3338, at ¶17, quoting *C.E. Morris v. Foley Construction Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. A reviewing court should make all reasonable presumptions in favor of the trial court's judgment and findings of fact. *Karches v. City of Cincinnati* (1988), 38 Ohio St.3d 12, 19, 526 N.E.2d 1350. "A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." *Seasons Coal*

*Co., Inc.* at 81.

{¶36} Schaefer testified that the safety issue escalated into an emergency because "[the City] got numerous calls from the Youngstown Police Department on – because of the vagrants and the usage of the building. * * * It kept escalating, and we had to try to find the funding to do this property." The record also contains the January 19, 2007 letters from the City's Department of Public Works, Housing and Demolition to all five utilities requesting that service be removed from the property because it was "being processed for *emergency* demolition", (emphasis added). This constitutes competent, credible evidence that the City characterized the condition of Huffman's property as an emergency at the time those letters were sent. Because the City determined the property's condition was an emergency, it proceeded with demolition pursuant to Youngstown Codified Ordinance 1525.05, which does not require prior notice to the owner. Accordingly, this argument of the City is meritorious.

### Asserting and Defending a Claim for Demolition Costs

{¶37} The City's remaining two arguments are that it does not need to establish procedural compliance with R.C. 715.261 in order to collect demolition costs, and that Huffman failed to preserve his Due Process challenge. The City is partially correct.

{¶38} The City is correct that R.C. 715.261 does not explicitly provide that the City must establish procedural compliance before it can recover pursuant to the statute. However, "the demolition of a hazardous and unsafe building must be lawfully effected before a municipal corporation can seek to recover costs pursuant to R.C. 715.261." *Kern v. City of Chillicothe* (Sept. 5, 1997), 4th Dist. No. 96CA2225. And Ohio courts have held that a critical component of a lawful demolition is notice that comports with due process. See *Englewood v. Turner,* 178 Ohio App.3d 179, 2008-Ohio-4637, 897 N.E.2d 213.

{¶39} However, because the City determined the condition of the property was an emergency, it proceeded with demolition pursuant to Youngstown Codified Ordinance 1525.05, which does not require notice. Thus, there were no due process

requirements the City had to meet before demolishing Huffman's property. Accordingly, the demolition was lawful, and the City can recover its demolition costs. *Kern, Englewood.* This conclusion moots the City's argument regarding how Huffman asserted his Due Process challenge.

**{¶40}** In conclusion, the City's assignment of error is meritorious. Because there is competent, credible evidence that the City determined the condition of Huffman's property was an emergency; Youngstown Codified Ordinance 1525.05 permitted the City to raze the building without providing notice as a matter of law. Therefore, the City lawfully demolished the property, and can recover the cost of demolition from Huffman pursuant to R.C. 715.261. Accordingly, the judgment of the trial court is reversed, and the case remanded for the trial court to enter judgment in favor of the City.

Waite, P.J., concurs.

Vukovich, J., concurs.