[Cite as *Bennett v. KeyBank, N.A.*, 2020-Ohio-1152.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Susan Bennett                                   Court of Appeals No. L-19-1249

    Appellant                                 Trial Court No. CI0201802587

v.

KeyBank, N.A.                                   **DECISION AND JUDGMENT**

    Appellee                                  Decided:  March 27, 2020

* * * * *

John J. McHugh, III, for appellant.

Scott A. King, Anthony J. Rospert, and Todd M. Seaman, for appellee.

* * * * *

**ZMUDA, P.J.**

## I.  Introduction

{¶ 1} In this accelerated appeal, appellant, Susan Bennett, appeals the judgment of the Lucas County Court of Common Pleas, ordering the parties to proceed to arbitration of appellant's claims against appellee, KeyBank, N.A., and staying the matter pending arbitration.

## A. Facts and Procedural Background

{¶ 2} On May 30, 2018, appellant filed her complaint with the trial court, alleging that appellee breached its certificates of deposit agreement with her husband, David, who passed away in March 2017. According to the complaint, David established an individual retirement account ("IRA") with the Toledo Trust Company[1] on July 27, 1984, and funded the account with contributions of $18,971.84 and $102,244.60 at that time. The contributions were used to acquire two Certificates of Deposit ("CDs") from the Toledo Trust Company.

{¶ 3} According to their terms, the CDs matured over a term of 480 months, ending on July 27, 2024, at an annual interest rate of 12.75%, compounded quarterly. In 1999, David turned 70.5 years old, and was therefore required to take certain required minimum distributions ("RMD") in order to ensure the continuation of the CDs. David took the required RMD as necessary, and appellee continued to manage the IRA account.

{¶ 4} On March 10, 2017, appellant notified appellee of David's death. Appellee then informed appellant that she was the beneficiary under the terms of David's IRA, which held a balance of $3,815,196.41 as of March 27, 2017. During the remainder of 2017, appellant and appellee allegedly discussed the idea of a spousal rollover of David's IRA into appellant's name, along with a transfer of the CDs contained within that IRA.

---

[1] Appellee is the successor in interest to the Toledo Trust Company.

2.

Additionally, the parties discussed how to ensure that the 2017 RMD was taken from the IRA before the end of the year in order to comply with applicable tax law.

{¶ 5} Following the parties' discussions, on December 15, 2017, appellee liquidated the CDs and placed the funds into a newly established money market IRA account that it opened for appellant. The money market account that appellee opened on behalf of appellant earns interest at a variable rate (approximately .15% according to the complaint) that is far lower than the rate previously earned by the liquidated CDs.

{¶ 6} According to appellant's complaint, appellee was not authorized to liquidate the CDs. Rather, appellant claimed that appellee was expected to transfer the CDs into her money market IRA in order to retain the favorable terms of the CDs for appellant's benefit. In unilaterally liquidating the CDs, appellant alleged that appellee "breached its certificates of deposit agreement with David, which specifically permitted transfer by assignment of the CDs on the books of the Bank." Appellant sought judgment in her favor on her claim of breach of the certificates of deposit agreement in the amount of $3,897,000, which represented the alleged reduction in value of appellant's spousal interest in David's IRA resulting from appellee's liquidation of the CDs.[2]

{¶ 7} On July 3, 2018, appellee responded to appellant's complaint by filing its motion to dismiss the complaint. In its motion, appellee argued, among other things, that

---

[2] Appellant's complaint was later amended to allege that she "has been damaged by KeyBank's self-dealing in liquidation of the CDs and the placement of the cash proceeds in a variable rate KeyBank Money Market Account in the amount of not less than $4,000,000.00."

3.

this matter is governed by a broad arbitration provision set forth in a deposit agreement referred to as the "Deposit Account Agreement and Funds Availability Policy." The deposit agreement was filed with the trial court and authenticated by the affidavit of Denis Preston, appellee's custodian of records.[3] Appellee reasoned that the deposit agreement and its arbitration provision became binding on appellant when she opened her money market IRA and transferred the cash value of David's CDs into the account. Therefore, appellee urged the trial court to dismiss the action and submit it to arbitration.

{¶ 8} On September 18, 2018, appellant filed her memorandum in opposition to appellee's motion to dismiss. In her memorandum, appellant argued that the arbitration provision set forth in the deposit agreement governing appellant's money market IRA did not apply to David's IRA, which was opened several decades earlier with the Toledo Trust Company and did not originally include an agreement to arbitrate disputes.

{¶ 9} In its October 1, 2018 reply to appellant's memorandum in opposition, appellee pointed to the broad terms of the arbitration provision, insisting that the provision applied to "any claims relating to her own money market account." As such, appellee argued that "the fact that Plaintiff and Key entered into a contract requiring arbitration is determinative of the issue of arbitrability, not whether Mr. Bennett agreed to arbitration." Additionally, appellee argued that David's IRA was subject to a deposit

---

[3] A second affidavit from Preston was filed with the trial court by appellee on June 26, 2019. The relevant documents pertaining to David's IRA were attached to, and authenticated by, the second affidavit.

4.

agreement that did, in fact, contain an arbitration provision to which David assented by maintaining his IRA and CDs with appellee.

{¶ 10} Because the parties' briefs relating to appellee's motion to dismiss referenced numerous exhibits not contained in appellant's complaint, the trial court converted the motion to dismiss under Civ.R. 12(B)(6) into a motion for summary judgment, and permitted the parties to supplement their arguments accordingly. On June 17, 2019, the trial court held a hearing on appellee's motion for summary judgment.

{¶ 11} The trial court issued its decision on appellee's motion for summary judgment on September 30, 2019. In its decision, the court found that appellant's claims were not subject to arbitration under the deposit agreement that governed appellant's money market IRA. However, the court found that appellant's claims were subject to the arbitration provision contained in the Deposit Account Agreement that governed David's IRA.

{¶ 12} Specifically, the court noted that David, wishing to extend the maturity date on one of the retirement accounts contained within his IRA, executed a "Retirement Account Change of Investment Term" form in 1996. By signing the form, David acknowledged receipt of written disclosures about the terms and conditions governing his IRA and agreed to such terms and conditions. These disclosures were contained on another form entitled "Facts about your Retirement Deposit Account," which was attached to the Retirement Account Change of Investment Term form and explained that David's IRA was "subject to [appellee's] Deposit Account Agreement." In turn, the Deposit Account Agreement contained an arbitration provision at paragraph 25,

5.

providing that either party "may require that any dispute relating to your Account * * * be submitted to arbitration." Under its terms, this agreement stated that it governed "all Accounts you maintain with [appellee]," and reserved the right to change the terms of David's IRA with notice of such changes.

{¶ 13} In addition to its reliance on the foregoing documents, the court, in its decision, referenced an IRA statement that was sent to David on December 31, 2012, which included language of an "IMPORTANT NOTICE OF CHANGE TO THE ARBITRATION PROVISION OF YOUR DEPOSIT ACCOUNT AGREEMENT" that amended the arbitration provision found at paragraph 25 of David's Deposit Account Agreement and Funds Availability Policy. Under the new language, the arbitration provision applied to any "claim, dispute, or controversy between [David] and [appellee] arising from or relating to this [Deposit Account Agreement] or [David's] Account(s)." The notice informed David that the changes to the arbitration provision contained in the Deposit Account Agreement would "apply to your Account(s) unless you notify us in writing that you reject the Arbitration Provision within 60 days of opening your Account(s)."

{¶ 14} Based upon the documents submitted by appellee in support of its motion for summary judgment, the trial court found that David agreed to arbitrate any claims regarding his IRA in 1996. The court also found that the 1996 arbitration provision was appropriately modified in 2012, as permitted by the Deposit Account Agreement. Because appellant's claims involved appellee's handling of David's IRA, and in light of the court's determination that claims pertaining to David's IRA were subject to the

6.

arbitration provision contained in the Deposit Account Agreement, the trial court granted appellee's motion for summary judgment, in part, and ordered the parties to proceed to arbitration.

{¶ 15} Appellant timely appealed the trial court's judgment, and we subsequently placed this matter on our accelerated calendar.

## B. Assignments of Error

{¶ 16} On appeal, appellant assigns the following assignment of error:

The trial court erred prejudicially in concluding that plaintiff, as an IRA spousal beneficiary, was required to arbitrate her claims for breach of contract and breach of fiduciary duty against KeyBank, N.A., when the Bank unilaterally reduced her contracted rate of return from 12.75% to .1% and eliminated the extended maturity date on the retirement account assets, following the death of her husband.[4]

## II. Analysis

{¶ 17} In her sole assignment of error, appellant argues that the trial court erred in finding that the claims raised in her complaint were subject to arbitration.

---

[4] The language of appellant's assignment of error seemingly raises two issues: (1) the applicability of the arbitration clause to the dispute in this case; and (2) the propriety of appellee's unilateral liquidation of the CDs. The parties argue the first issue in their briefs, but the second issue is not separately argued. The second issue relates to the merits of appellant's underlying claims. However, the judgment that is on appeal here merely resolved the first issue, namely whether the parties are required to resolve their dispute in arbitration, and our review will therefore be limited to that issue.

7.

{¶ 18} Whether a party has agreed to submit an issue to arbitration is an issue we review de novo. *Arnold v. Burger King*, 2015-Ohio-4485, 48 N.E.3d 69, ¶ 11 (8th Dist.); *see also Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 2. Because arbitration is a matter of contract, a party may only be forced to arbitrate a dispute that it has agreed to submit to arbitration. *Taylor v. Ernst & Young, LLP*, 130 Ohio St.3d 411, 2011–Ohio–5262, 958 N.E.2d 1203, ¶ 20.

{¶ 19} "A state court may rely on a federal standard in applying state law on the issue of arbitrability, but that standard must be a correct statement of both Ohio law and applicable federal precedent." *Academy of Medicine of Cincinnati v. Aetna Health, Inc.*, 108 Ohio St.3d 185, 2006-Ohio-657, 842 N.E.2d 488, ¶ 15.

{¶ 20} Appellant, both in the trial court below and in this court on appeal, argues that her obligation to arbitrate, if any, could only arise were we to find the existence of an arbitration provision attached to David's IRA. We agree. The dispute in this case relates to the bank's unilateral liquidation of the CDs and whether the bank was authorized to do so. The CDs were contained within David's IRA, and thus resolution of the dispute here requires reference to David's IRA. Arguments that go to the merits are premature at this point, because the issue of arbitrability, the only issue before us, merely decides the forum in which to hear and decide the merits in this case.

{¶ 21} In this case, appellant does not argue that the arbitration provision contained in David's Deposit Account Agreement is so limited in scope that it would not, if applicable, cover the claims raised by appellant. Indeed, the arbitration provision governs "all disputes" between David and appellee related to his IRA, and is therefore

8.

broad in its scope. However, appellant argues that this arbitration provision does not apply to her because David did not separately sign the Deposit Account Agreement containing the provision, and appellee "offered no evidence that David Bennett ever saw [the] Deposit Account Agreement." In essence, appellant challenges the enforceability of the arbitration provision because its applicability is through an incorporation by reference to a *chain* of documents.[5]

{¶ 22} In response, appellee contends that the arbitration provision is enforceable as it was properly incorporated as a term of David's IRA when David executed the Retirement Account Change of Investment Term form in 1996. Appellee posits that the incorporated arbitration provision is enforceable irrespective of whether David reviewed it or separately signed it. Appellee separately contends that David acquiesced to arbitration when he failed to object to the arbitration terms outlined in his 2012 IRA statement.

{¶ 23} The enforceability of the amendments to the arbitration provision that are outlined in the 2012 IRA statement hinges upon our determination as to whether the 1996 arbitration provision contained in David's Deposit Account Agreement was properly

[5] A fiduciary relationship between David and appellee was presumably in existence prior to the date on which David executed the Retirement Account Change of Investment Term form that incorporated the arbitration provision by reference. However, whether appellee breached a fiduciary duty to David when it presented the Retirement Account Change of Investment Term form, allegedly without expressly disclosing the arbitration provision that was thereby incorporated, is not before us. Appellant has not alleged a separate claim of breach of fiduciary duty on that basis, and the sole issue raised by appellant in this appeal is whether the arbitration provision is enforceable, not whether appellee violated a duty owed to David in incorporating the arbitration provision.

9.

incorporated into the Retirement Account Change of Investment Term form in 1996, because the authority to make changes to David's IRA was first instituted in the 1996 Deposit Account Agreement. Moreover, if the original arbitration provision was properly incorporated by reference, the enforceability of the 2012 amendments to the arbitration provision becomes immaterial, as the parties' dispute in this case would be subject to arbitration under the original arbitration provision in any event. For the reasons stated below, we conclude that the original arbitration provision was properly incorporated by reference and is therefore binding on the parties in this case. Since the 1996 arbitration provision provides an independent basis for referring this matter to arbitration, we need not, and therefore will not, address appellee's argument that arbitration is required under the terms of David's 2012 IRA statement.

{¶ 24} In Ohio, separate agreements may be incorporated by reference into a signed contract. *KeyBank Natl. Assn. v. Columbus Campus, L.L.C.*, 2013-Ohio-1243, 988 N.E.2d 32, ¶ 21 (10th Dist.). Under the incorporation doctrine, when a document is incorporated into a contract by reference, that document becomes part of the contract. *Id.* The parties to the contract need not separately execute the incorporated document in order to be bound by its terms. *Garcia v. Wayne Homes*, 2d Dist. Clark No. 2001CA53, 2002-Ohio-1884, ¶ 44. Rather, a party to a contract, which incorporates terms contained in another document, has a duty to review the contract and those documents incorporated into it before signing the contract. *Info. Leasing Corp. v. GDR Invs., Inc.*, 152 Ohio App.3d 260, 2003-Ohio-1366, 787 N.E.2d 652, ¶ 22 (1st Dist.).

10.

{¶ 25} In general, "the parties to a contract may incorporate contractual terms by reference to a separate, noncontemporaneous document, including * * * a separate document which is unsigned[,]" if "the contract makes clear reference to the document and describes it in such terms that its identity may be ascertained beyond doubt." 11 Lord, Williston on Contracts, Section 30:25, at 294–301 (4th Ed.2012). Consequently, "mere reference to another document is not sufficient to incorporate that document into a contract; the contract language must also clearly demonstrate that the parties intended to incorporate all or part of the referenced document." (Citations omitted). *Volovetz v. Tremco Barrier Solutions, Inc.*, 2016-Ohio-7707, 74 N.E.3d 743, ¶ 27 (10th Dist.). Stated succinctly:

> the language used in a contract to incorporate extrinsic material by reference must explicitly, or at least precisely, identify the written material being incorporated and must clearly communicate that the purpose of the reference is to incorporate the referenced material into the contract * * *.

*Northrop Grumman Information Technology, Inc. v. United States*, 535 F.3d 1339, 1345 (Fed.Cir.2008).

{¶ 26} Here, there is no dispute that David executed the Retirement Account Change of Investment Term form in 1996. According to the express terms of that form, David's signature constituted an acknowledgment that he received "written disclosures about the terms and conditions governing [his] Retirement Deposit Account and [agreed] to such terms and conditions." Whether David actually reviewed the terms and conditions referenced by the Retirement Account Change of Investment Term form is

11.

irrelevant, because the incorporation was clearly stated within the document David voluntarily executed. Indeed, Ohio law adheres to the "long-held principle that parties to contracts are presumed to have read and understood them and that a signatory is bound by a contract that he or she willingly signed." *Preferred Capital, Inc. v. Power Engineering Group, Inc.*, 112 Ohio St.3d 429, 2007-Ohio-257, 860 N.E.2d 741, ¶ 10, citing *Haller v. Borror Corp.*, 50 Ohio St.3d 10, 14, 552 N.E.2d 207 (1990) and *DeCamp v. Hamma*, 29 Ohio St. 467, 471-472 (1876).

{¶ 27} The terms and conditions governing David's Retirement Deposit Account were conspicuously set forth in the "Facts about your Retirement Deposit Account" form, which was attached to the Retirement Account Change of Investment Term form. Included within those terms and conditions was the statement that "Retirement Deposit Accounts are also subject to our Deposit Account Agreement." Here, the reference explicitly referenced the incorporated document, the Deposit Account Agreement, by name.

{¶ 28} Appellant concedes that both of the foregoing documents (the Retirement Account Change of Investment Term form and the Facts about your Retirement Deposit Account form) were provided to David at the time of his execution of the Retirement Account Change of Investment Term form. The arbitration provision at issue here was clearly set forth in the Deposit Account Agreement referenced by the Facts about your Retirement Deposit Account form.

{¶ 29} As noted above, a document may be incorporated into a contract, and therefore treated as part of the contract, so long as it is clearly referenced in the contract

that is executed by the parties, and so long as the intention to incorporate the document into the contract is clear from the language employed. Both of these requirements are met in this case as to each step in the chain of incorporation; the Retirement Account Change of Investment Term form expressly incorporates the terms and conditions contained in the Facts about your Retirement Deposit Account form, which expressly references and incorporates the Deposit Account Agreement containing the arbitration provision.

{¶ 30} The salient issue raised by appellant in this case is how many incorporations by reference are allowed in these cases. Having extensively reviewed the law on this issue, there appears to be no upper limit so long as each layer of incorporation complies with traditional contract principles concerning incorporation by reference. We are making no new law in this case, as multiple incorporations by reference that are less direct than those involved here have been upheld previously. *See Exchange Mut. Ins. Co. v. Haskell Co.*, 742 F.2d 274, 275-76 (6th Cir.1984) (holding that the following "series of contract agreements" in a construction case required the matter to be referred to arbitration; a performance bond between appellant, the bond company, and subcontractor incorporated the subcontractor's Subcontract with appellee, the general contractor, which incorporated the General Contract containing the arbitration provision). Because each layer in this case comports with the requirements of the incorporation by reference doctrine, we conclude that the arbitration provision contained in the Deposit Account Agreement became binding on David (and appellant by extension) when he executed the Retirement Account Change of Investment Term form that incorporated the provision by

13.

reference in 1996.  Thus, we conclude that the trial court properly found that this matter is subject to arbitration.  We note that our determination in this case does not impact appellant's *substantive* arguments, which we have not examined in this appeal.  Rather, we have merely determined that arbitration is the appropriate forum in which this matter is to proceed.

{¶ 31} Accordingly, appellant's sole assignment of error is not well-taken.

### III.  Conclusion

{¶ 32} In light of the foregoing, the judgment of the Lucas County Court of Common Pleas is affirmed.  Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.  *See also* 6th Dist.Loc.App.R. 4.


Arlene Singer, J.                          _____
                                                          JUDGE
Thomas J. Osowik, J.          

Gene A. Zmuda, P.J.                  _____
CONCUR.                                                JUDGE

                                                     _____
                                                                  JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.