[Cite as *Marietta v. Professional Serv. Industries, Inc.*, 2025-Ohio-1530.]

# IN THE COURT OF APPEALS OF OHIO
## FOURTH APPELLATE DISTRICT
## WASHINGTON COUNTY

| | | |
|---|---|---|
| CITY OF MARIETTA, | : | |
| | : | |
| Plaintiff-Appellant, | : | Case No. 23CA12 |
| | : | |
| v. | : | |
| | : | <u>DECISION AND JUDGMENT</u> |
| PROFESSIONAL SERVICE, | : | <u>ENTRY</u> |
| INDUSTRIES, INC., ET AL., | : | |
| Defendant-Appellees. | : | |

_____

## APPEARANCES:

Jeffrey P. McSherry, Mark Evans, Samuel Lewis, Bricker Graydon LLP, Columbus, Ohio, for Plaintiff-Appellant City of Marietta, Ohio.

Paul G. Bertram, III, Marietta City Law Director, Marietta, Ohio, for Plaintiff-Appellant City of Marietta, Ohio.

Scott A. Fenton, Dickie, McCamey & Chilcote, P.C., Columbus, Ohio, for Defendants-Appellees Professional Service Industries, Inc. and Intertek PSI.

Julian T. Emerson, Reminger Co., L.P.A., Cleveland, Ohio, for Defendants Jobes, Henderson & Associates, Inc. and Hull & Associates, LLC.[1]

_____

Smith, P.J.

{¶1} The City of Marietta appeals the May 7, 2023 entry of the Washington County Court of Common Pleas granting summary judgment on a contractual dispute to Professional Service Industries, Inc. and Intertek

---

[1] These defendants have not participated in this appeal.

PSI. The City of Marietta ("City") asserts that summary judgment was erroneous for the following reasons: (1) the parties' original written agreement was superseded; (2) even if the original agreement was not superseded, the City's claims are not barred based on statute of limitations; (3) Professional Service Industries, Inc., ("PSI"), failed to attach the correct documentation to its motion for summary judgment; and (4) for the same reasons applicable to PSI, Intertek PSI ("Intertek") was also not entitled to summary judgment. However, for the reasons which will follow, we find no merit to the City's arguments. Accordingly, the sole assignment of error is hereby overruled.

## FACTUAL AND PROCEDURAL BACKGROUND

{¶2} This appeal involves the interpretation of two written agreements between the same parties, the City and PSI. These agreements were executed in connection with a multi-phase construction project, the Ohio River Trail (or "Project"), located in Marietta, Ohio. For purposes of this appeal, we need only recite the facts relating to Phase V of the project.

{¶3} On May 26, 2015, the City entered into a written agreement with PSI for geotechnical services related to the Project. The agreement was captioned: "AGREEMENT 27-15 BETWEEN THE CITY OF MARIETTA AND PROFESSIONAL SERVICE INDUSTRIES, INC., (PSI)." We will

reference this document as "Agreement 27-15." The subject matter of

Agreement 27-15 is set forth in its second paragraph as follows:

> City desires to engage Consultant to provide geotechnical engineering services for the proposed Ohio River Trail Phase 5 pedestrian bridge and retaining wall design and construction along Duck Creek…"[2]

{¶4} At ARTICLE II: SCOPE OF SERVICES, 2.1, Agreement 27-15

provides that "Consultant shall perform the services more fully described in

Exhibit A attached hereto." Exhibit A is captioned: "Proposal for Structure

Foundation Exploration for Proposed Bridge over Duck Creek and Cut

Slope WAS-River Trail Phase V." The proposal, as reflected in Exhibit A,

was revised on March 7, 2015. We will refer to Exhibit A attached to the

first agreement as the "Revised Proposal."

{¶5} Page 10 of the Revised Proposal is captioned: "GENERAL

CONDITIONS." This page is difficult to read. However, it can be seen that

at Paragraph 10 of the General Conditions, there is a provision for a two-

year period of limitations for which to bring claims.

{¶6} Agreement 27-15 also provides at Page 7:

ARTICLE XVII: ENTIRE AGREEMENT/WAIVER

17.1 This Agreement contains the entire agreement between the parties hereto and shall not be modified, amended or supplemented, or

---

[2] "Consultant" refers to PSI.

any rights herein waived, unless specifically agreed upon in writing by the parties hereto.

{¶8} A second written agreement between the parties was executed on June 1, 2015.[3] The subsequent agreement is captioned: "CITY OF MARIETTA AGREEMENT NO. 19011." The subject matter of the second agreement is set forth as follows:

CLAUSE I - WORK DESCRIPTION

The Consultant agrees to perform all professional services as may be authorized by the City for geotechnical exploration for development of construction plans for a multi-use path Washington County, Ohio, identified as WAS-Marietta River Trail Ph. 5, PID No. 95320.

Clause IV of the second agreement also contains an incorporation clause.

{¶9} In correspondence dated May 26, 2015, the City's Engineering Office Manager, Tina Lones, sent Agreement 27-15 to PSI to execute and return to the City. When PSI received Agreement 27-15, there were three exhibits attached to Agreement 27-15 as follows: Exhibit A, the Revised Proposal; Exhibit B, the second written agreement; and Exhibit C, insurance requirements. When PSI received Agreement 27-15, Exhibits A,B, and C had been labeled as such.

---

[3] This second agreement is referred to as "second" or "subsequent." It has also been referenced as the "ODOT agreement."

{¶10} On June 1, 2015, John Xu, PSI's Manager of Geotechnical Services, signed Agreement 27-15 and also signed the second agreement attached as Exhibit B. On June 10, 2015, Joseph R. Tucker, the City's Engineer, sent PSI a Notice to Proceed "in accordance with ODOT Agreement No. 19011 and the City's Contract Agreement No. 27-15 dated May 26, 2015…" On June 28, 2017, PSI issued a revised Structure Foundation Exploration Report for the Project. Tucker testified in deposition that to his knowledge, the report was the final report received from PSI.

{¶11} Quite unfortunately, the Duck Creek retaining wall failed in 2020, causing significant damages to the multiuse trail. On June 19, 2020, the City sent a letter notifying PSI of the incident and resulting damages. On June 23, 2021, the City filed suit against PSI and Intertek claiming breach of contract and negligence. During the proceedings, Joseph R. Tucker, P.E. and Sean Eric Lambert, P.E. were deposed. The matter eventually proceeded to motion practice.

{¶12} On November 14, 2022, PSI filed "Motion of Defendants Professional Service Industries, Inc. and Intertek PSI for Summary Judgment." The defendants jointly argued that the City's claims are barred by the two-year contractual limitations provision of the General Conditions

contained in the Revised Proposal and attached to Agreement 27-15. Intertek also moved for dismissal arguing that "Intertek PSI" is only a registered trade name of PSI and that Intertek did not enter any additional contracts with the City as a separate entity.

{¶13} On December 2, 2022, the City filed a memorandum in opposition to PSI's motion. The City argued that the second agreement superseded the Agreement 27-15 and that the second agreement did not contain a two-year limitations clause. On January 18, 2023, PSI filed a reply memorandum. In rendering its decision, the trial court found that the contractual relationship of the parties is unambiguous and that PSI and Intertek PSI are entitled to summary judgment as a matter of law.

{¶14} This timely appeal followed. Where pertinent, additional clauses contained in the parties' written agreements are set forth herein.

## ASSIGNMENT OF ERROR

I. THE TRIAL COURT ERRED IN GRANTING THE MOTION FOR SUMMARY JUDGMENT FILED BY APPELLEE-DEFENDANT PROFESSIONAL SERVICE INDUSTRIES, INC. AND APPELLEE-DEFENDANT INTERTEK PSI.

### Standard of Review

{¶15} We review the trial court's decision on a motion for summary judgment de novo. *Barclay Petroleum, Inc. v. Bailey,* 2017-Ohio-7547, ¶ 15

(4th Dist.); *Smith v. McBride,* 2011-Ohio-4674, ¶ 12.  Accordingly, we afford no deference to the trial court's decision and independently review the record and the inferences that can be drawn from it to determine whether summary judgment is appropriate.  *Harter v. Chillicothe Long Term Care, Inc.,* 2012-Ohio-2464, ¶ 12; (citation omitted.)

{¶16} Summary judgment is appropriate only when the following have been established:  (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party.  *Barclay Petroleum,* ¶ 16; Civ.R. 56(C); *DIRECTV, Inc. v. Levin,* 2010-Ohio-6279, ¶ 15.  In ruling on a motion for summary judgment, the court must construe the record and all inferences therefrom in the nonmoving party's favor.  Civ.R. 56(C).  The party moving for summary judgment bears the initial burden to demonstrate that no genuine issues of material fact exist and that they are entitled to judgment in their favor as a matter of law.  *Dresher v. Burt,* 75 Ohio St.3d 280, 292-293 (1996).  To meet its burden, the moving party must specifically refer to "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action," that affirmatively

demonstrate that the nonmoving party has no evidence to support the nonmoving party's claims.  Civ.R. 56(C); *Dresher* at 293, 662 N.E.2d 264.  Moreover, the trial court may consider evidence not expressly mentioned in Civ.R. 56(C) if such evidence is incorporated by reference in a properly framed affidavit pursuant to Civ.R. 56(E).  *Discover Bank v. Combs,* 2012-Ohio-3150, ¶ 17 (4th Dist.) (citation omitted.).  Once that burden is met, the nonmoving party then has a reciprocal burden to set forth specific facts to show that there is a genuine issue for trial.  *Dresher* at 293, 662 N.E.2d 264; Civ.R. 56(E).

{¶17} This case involves the interpretation of a written contract, which is a matter of law that we review de novo.  *Bohlen v. Anadarko E & P Onshore, LLC,* 2014-Ohio-5819, ¶ 12 (4th Dist.), citing *Arnott v. Arnott,* 2012-Ohio-3208, ¶ 14.  If the contract is ambiguous, then the court must construe the disputed language to ascertain the parties' intent.  This function involves a question of fact.  However, if a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to decide.  *Skirvin v. Kidd*, 174 Ohio App.3d 273, ¶ 14 (4th Dist.2007), citing *Latina v. Woodpath Dev. Co.,* 57 Ohio St.3d 212, 214 (1991).

Legal Analysis

Civil Rule 56

{¶18} The City raises several arguments within the sole assignment of error. The third argument will be addressed first as it challenges the evidence on which the merits of the summary judgment motion was decided. The City asserts that PSI failed to attach the correct documentation to its motion for summary judgment. Specifically, the City points out that Agreement 27-15 expressly referred to the "attached proposal, 'Exhibit A' dated **April 21, 2015."** (Emphasis added). However, the proposal attached to PSI's motion for summary judgment as an exhibit is dated **May 7, 2015,** (emphasis added), not April 21, 2015.[4]

{¶19} The City argues that because PSI failed to include a true and accurate copy of the April 21, 2015 proposal, PSI failed to carry its initial burden on summary judgment and, consequently, judgment to PSI should have been denied. Stated differently, the City is arguing that the trial court relied on improper evidence submitted by PSI. For the reasons which will follow, we disagree with the City.

{¶20} Civ.R. 56(C) provides for a limited scope of evidence that may be considered on summary judgment: "Summary judgment shall be

---

[4] This is the document which we will continue to refer to as the Revised Proposal.

rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact * * *." The rule goes on to state, "[n]o evidence or stipulation may be considered except as stated in this rule." *See also State v. Hubbard*, 2017-Ohio-1033, ¶ 28 (8th Dist.).

{¶21} In response, PSI points out that the May 7, 2015 (Revised Proposal) was attached to Agreement 27-15 and sent to PSI to sign in a letter dated May 26, 2015. It was the City's representative that had executed Agreement 27-15 prior to sending it to PSI, and the City's representative that forwarded the documents on May 26, 2015. PSI argues that the April 21, 2015 proposal was only an earlier version "drafted during preliminary discussions, not the edited version attached to the final executed Contract."

{¶22} As noted above at Paragraph 4, Agreement 27-15, **ARTICLE II, SCOPE OF SERVICES, 2.1**, provides that "Consultant shall perform the services more fully described in Exhibit A attached hereto." Later, Agreement 27-15 provides at **ARTICLE IV, COMPENSATION**, **4.3**: "See attached proposal "Exhibit A" dated April 21, 2015." In our view, the Affidavit of John Xu, P.E, attached to PSI's reply brief clears up any supposed confusion.

{¶23} Mr. Xu, Manager of Geotechnical Services for PSI, set forth his personal knowledge as follows:

> 5. Attached hereto as Exhibit 1-A is a true and accurate copy of the April 21, 2015 (Revised) Proposal PSI submitted to the City of Marietta.
>
> 6. After submitting the April 21, 2015 (Revised) Proposal, PSI again edited its proposal and sent the May 7, 2015 (Revised) Proposal to the City.
>
> 7. Attached hereto as Exhibit 1-B, are "true and accurate copies of the May 26, 2015 letter that Tina Lones, the City's Engineering Office Manager, sent to PSI to execute and return to the City, along with the following documents that accompanied the letter:
>
> a.  Contract 27-15
> b.  Exhibit A- the May 7, 2015 (Revised Proposal)
> c.  Exhibit C- Insurance Requirements

{¶24} Our review of the May 26, 2015 correspondence of Tina Lones demonstrates that her letter begins "Enclosed for your signature is Contract Agreement No. 27-15 between the City of Marietta and Professional Service Industries, Inc. for the above-referenced project."

{¶25} The testimony of Joseph R. Tucker, Engineer for the City of Marietta, also sheds light on the issue.  Mr. Tucker was asked to identify Agreement 27-15 (with attached Exhibits A, B, and C), both copy and original, which later became Exhibits 7 and 7.1 to his deposition.  Tucker testified:

> Q:      Okay.  If you turn to the next tab, Tab 7, is the agreement between City of Marietta, Ohio and Professional Service Industries, Inc. dated May 26, 2015. And this is a true and accurate copy of the City's agreement with PSI? (Thereupon, Exhibit 7 is marked for purposes of identification.)

> A:      Again, it's been a long time since I've seen these documents.  I'm looking for an Exhibit A…I see Exhibit B and Exhibit C…I'm sorry…I answered my own question.  There's Exhibit A…Looks to be complete yes.

> Q:      Okay.  And this one is stamped engineering copy, too.  So that would have been the original in the City's file?

> A:      It would be a copy of the original, yes.

> Q:      All right.  And I mean this was attached as Exhibit F again to the complaint…Okay, I guess because I was going to ask you to the best of your knowledge, is this a true and accurate copy of the original contract. (Thereupon, Exhibit 7.1 is marked for purposes of identification.)

> Q:      So we're going to mark this as 7.1.  Did you have a chance to review 7.1?...Okay I guess because I was going to ask to the best of your knowledge, is this a true and accurate copy of the original contract as well?  I just wanted to make sure there's no difference between 7 and 7.1.

> A:      I don't think I've looked at that…Yep, appears to be the same.

Tucker's testimony authenticated Exhibits 7 and 7.1, attached to his deposition.  Tucker's deposition testimony was certified by the court reporter as a true record of the testimony given.  *See Hubbard, supra.*

(Where deposition testimony was used to authenticate each piece of evidence attached to motion for summary judgment, trial court did not consider improper evidence as alleged).

{¶26} The City's argument herein is without merit. Via the testimony presented in the Xu affidavit, it seems obvious that throughout these proceedings, the Revised Proposal attached to Agreement 27-15 carried the earlier date of April 21, 2015 instead of the May 7, 2015 date. The deposition testimony of Joseph Tucker also demonstrated that Agreement 27-15 with the Revised Proposal attached, both copy and original, reflected the earlier April 21, 2015 date instead of the May 7, 2015 date. The City has not raised an issue with the actual substance of the Revised Proposal but for this technical error in date. We fail to see how this apparent oversight or scrivener's error which occurred during the parties' discussions prior to entering Agreement 27-15 affected the outcome of this litigation.[5]

{¶27} Based on the foregoing, we find no merit to the City's argument that PSI attached inaccurate documents to its motion for summary

---

[5]*See Trammell v. Broner,* 2023-Ohio-4143, fn 1 (5th Dist.) (Where total purchase price of property was $4,000 and first page of the Land Contract attached as an exhibit indicated a deposit amount of $2,800 was required, but second page indicated a deposit of $2,400 was actually paid on the date of the execution, court found the deposit amount noted on the first page was a scrivener's error and did not affect the outcome of the appeal); *Name change of Rowe,* 2019-Ohio-4666, ¶ 32, (4th Dist.) (Given other relevant circumstances, wrong date of judgment entry considered to be a simple scrivener's error); *Lawrence Twp. Bd. of Trustees v. Canal Fulton,* 2009-Ohio-6822, ¶ 20 (5th Dist.) (Where description contained in plat was a scrivener's error that was readily corrected, erroneous description did "not rise to the level of a reason that the Commissioners should have denied the annexation."

judgment or that the trial court relied on improper evidence in making its

determinations.

Principles of Contract Interpretation

{¶28} The focal issue raised under the City's sole assignment of error

is whether or not Agreement 27-15 was superseded by the second or

subsequent written agreement.  The parties do not dispute that the second

agreement was required by ODOT in order to secure federal funding for the

project.  " 'In all cases involving contract interpretation, we start with the

primary interpretive rule that courts should give effect to the intentions of

the parties as expressed in the language of their written agreement.' " *Teays*

*Valley Local School District Board of Education v. Struckman,* 2023-Ohio-

244, ¶70 (4th Dist.), quoting *Sutton Bank v. Progressive Polymers, L.L.C.,*

2020-Ohio-5101, ¶ 15, citing *Sunoco, Inc. (R & M) v. Toledo Edison Co.,*

2011-Ohio-2720, ¶ 37.  Courts presume that the language used in the

contract reflects the parties' intent.  *Smith v. Erie Ins. Co.,* 2016-Ohio-7742,

¶ 18; *Westfield Ins. Co. v. Galatis,* 2003-Ohio-5849, ¶ 11.

{¶29} "Thus, courts must first review the plain and ordinary meaning

of the language used in a contract 'unless manifest absurdity results, or

unless some other meaning is clearly evidenced from the face or overall

contents of the instrument.' " *Teays Valley,* ¶ 71, quoting *Alexander v.*

*Buckeye Pipe Line Co.,* 53 Ohio St.2d 241 (1978), paragraph two of the

syllabus; *accord Galatis* at ¶ 11.  If the language is clear and unambiguous,

"a court may look no further than the writing itself to find the intent of the

parties." *Galatis* at ¶ 11.  "[A] contract is unambiguous if it can be given a

definite legal meaning." *Id.*  (citation omitted).

{¶30} In the decision granting summary judgment, the trial court held:

"The Court finds that the contractual relationship of the parties is

unambiguous.  The Plaintiff's Complaint acknowledges that Agreement 27-

15 applies."  The trial court also found:

> [Agreement 27-15] stated that the Consultant shall perform the services more fully described in Exhibit A. Exhibit A was PSI's Proposal for Structure Foundation Exploration for Proposed Bridge over Duck Creek and Cut Slope WAS-River Trail Phase V. This proposal stated in two places that the services will be conducted in accordance with PSI's General Conditions which are part of the proposal.

{¶31} In support of its argument that the second contract superseded

Agreement 27-15, the City argues that the Affidavit of Sean Eric Lambert

establishes that "[t]he City and PSI understood that the Substitute

Agreement would replace the First Agreement."  The City contends that the

second agreement is complete and unambiguous on its face, with the

intention of the parties being that the second agreement would supersede

Agreement 27-15.  Therefore, the General Conditions containing the two-

year limitations period would be, if anything, a term of Agreement 27-15,

now superseded, and not applicable to bar the City's claims. Our analysis of

the City's contentions necessitates discussion of the rules of contract

incorporation and the parol evidence rule.

Rules of Incorporation of Contracts

{¶32} In Ohio, separate agreements may be incorporated by reference

into a signed contract. *Bennett v. KeyBank, N.A.,* 2020-Ohio-1152, ¶ 24 (6th

Dist.). Under the incorporation doctrine, when a document is incorporated

into a contract by reference, that document becomes part of the contract.

*KeyBank Natl. Assn. v. Columbus Campus, L.L.C.*, 2013-Ohio-1243, ¶ 21

(10th Dist.). The parties to the contract need not separately execute the

incorporated document in order to be bound by its terms. *Garcia v. Wayne

Homes,* 2002-Ohio-1884, ¶ 44 (2d Dist.).

{¶33} In general, "the parties to a contract may incorporate

contractual terms by reference to a separate, noncontemporaneous

document, including * * * a separate document which is unsigned[,]" if "the

contract makes clear reference to the document and describes it in such

terms that its identity may be ascertained beyond doubt." 11 Lord, Williston

on Contracts, Section 30:25, at 294-301 (4th Ed.2012). Consequently,

"mere reference to another document is not sufficient to incorporate that

document into a contract; the contract language must also clearly

demonstrate that the parties intended to incorporate all or part of the

referenced document." (Citations omitted). *Volovetz v. Tremco Barrier*

*Solutions, Inc.,* 2016-Ohio-7707, ¶ 27 (10th Dist.). Stated succinctly:

> The language used in a contract to incorporate extrinsic material by reference must explicitly, or at least precisely, identify the written material being incorporated and must clearly communicate that the purpose of the reference is to incorporate the referenced material into the contract * * *. *Northrop Grumman Information Technology, Inc. v. United States,* 535 F.3d 1339, 1345 (Fed.Cir.2008).

{¶34} The City argues that the only provisions expressly incorporated

from the Revised Proposal come from ARTICLE II SCOPE OF SERVICES

and ARTICLE IV: COMPENSATION. These articles expressly reference

Exhibit A, the Revised Proposal, as follows:

> ARTICLE II:  SCOPE OF SERVICES
>
> 2.1    Consultant shall perform the services more fully described in Exhibit A, attached hereto.
>
>
>
> ARTICLE IV:  COMPENSATION
>
> 3.0    Services will be conducted in accordance with PSI's General Conditions which are attached and made part of this proposal.

{¶35} The City argues that because Agreement 27-15 references the Revised Proposal at Articles II and IV only, this constitutes clear evidence that the entire Revised Proposal was **not** incorporated.  (Emphasis added.) However, upon our review of the applicable Ohio law and the language of these documents, we agree with the trial court's analysis and interpretation of Agreement 27-15 as clear and unambiguous.

{¶36} In *Bennett, supra*, the appellate court discussed "layers of incorporation." *Id*. at ¶ 30.  The Sixth District court observed:

> Having extensively reviewed the law on this issue, there appears to be no upper limit so long as each layer of incorporation complies with traditional contract principles concerning incorporation by reference. We are making no new law in this case, as multiple incorporations by reference that are less direct than those involved here have been upheld previously. *See Exchange Mut. Ins. Co. v. Haskell Co.,* 742 F.2d 274, 275-76 (6th Cir.1984) (holding that the following "series of contract agreements" in a construction case required the matter to be referred to arbitration; a performance bond between appellant, the bond company, and subcontractor incorporated the subcontractor's Subcontract with appellee, the general contractor, which incorporated the General Contract containing the arbitration provision).

The dispute between the City and PSI involves "layers of incorporation."

{¶37} We first observe that the general subject matter of the Agreement 27-15 was for PSI to provide geotechnical services to the City.  Agreement 27-15, Article II, 2.1 provides that these services are "more fully described

in Exhibit A…" Similarly, the subject matter of the second written agreement is described as "professional services as may be authorized by the City for geotechnical exploration for development of construction plans for a multi-use path..." In addition, Exhibit A, the Revised Proposal, sets forth in its first paragraph that "we appreciate the opportunity to submit this proposal to provide geotechnical engineering services." All three documents indicate geotechnical services is the subject matter of discussion/negotiation between the parties. However, the City argues that these factual circumstances, "same parties, same project, same scope of services," surrounding execution of the agreements, including the difference in effective dates, supports its conclusion that the latter agreement superseded the earlier agreement.

{¶ 38} The City's contentions are without merit. The term of a contract may be affected by another writing executed as part of the same transaction. *Ohio Assn. of Pub. School Emps./AFSCME Local 4, AFL-CIO v. Madison Local School Dist. Bd. Of Edn.,* 190 Ohio App.3d 254, ¶ 27 (11th Dist. 2010), (citation omitted), also citing *Edward A. Kemmler Mem. Found. v. 691/733 East Dublin-Granville Rd. Co.,* 62 Ohio St.3d 494, 500 (1992). " 'As a general rule of construction, a court may construe multiple documents together if they concern the same transaction.' " *Seyfried v. O'Brien,* 2017-Ohio-286, ¶ 24 (8th Dist.), quoting *Ctr. Ridge Ganley, Inc. v.*

*Stinn,* 31 Ohio St.3d 310, 314 (1987).  "[A]ll writings that are a part of the same transaction should be interpreted together, and effect should be given to every provision of every writing." *Prudential Ins. Co. of Am. v. Corporate Circle,* 103 Ohio App.3d 93, 98 (8th Dist.1995), citing *Abram & Tracy, Inc. v. Smith,* 88 Ohio App.3d 253 (10th Dist.1993).  "[W]ritings executed as part of the same transaction, will be read as a whole, and the intent of each part will be gathered from a consideration of the whole." *Foster Wheeler Enviresponse v. Franklin Cty. Convention Facilities Auth.,* 78 Ohio St.3d 353, 361 (1997).  And, when a contract incorporates a prior agreement by reference, that prior agreement is to be read as though it had been restated in the contract.  *See Marcinko v. Palm Harbor Homes*, 2002-Ohio-3313, ¶ 13 (4th Dist.) (Additional citations omitted.)

{¶39} In this case, the Revised Proposal is a ten-page document of a highly technical nature.  Headings and sub-headings are as follows:

**1.0  REQUESTED SCOPE OF SERVICES**

**1.1  Project Information**

**1.2  Scope of Services**

> **Reconnaissance and Planning**
>
> **Field Exploration for Retaining Structure Foundation**
>
> **Laboratory Testing**

**Foundation Exploration Report**

**Subsurface Investigation Drawings**

**Maintenance of Traffic**

**Permits and Right-of-Entry**

**2.0  PROJECT APPROACH**

**2.1  Geotechnical Study**

**3.0  COMPENSATION**

**4.0 EXCLUSIONS[6]**

**5.0  SCHEDULE**

**6.0  SPECIAL INSTRUCTIONS[7]**

{¶40} In our view, the Revised Proposal is "a separate written instrument relating to the transaction" which must be construed with reference to Agreement 27-15.  The only reasonable interpretation, when reading together the Revised Proposal and Agreement 27-15, is that the Revised Proposal was fully incorporated into Agreement 27-15.  Agreement 27-15 sets forth standard contract terms and clauses.  By contrast, the Revised Proposal sets forth detailed and technical information in which it

---

[6] Under this section, for example, the information set forth relates to "[p]roject services proposed herein are conventional in nature and do not include an evaluation of the site for detering the presence or absence of wetlands or hazardous or toxic materials."  This is just the first sentence of a highly specific two paragraph explanation.

[7] This section is a highly specific three paragraph discussion which begins "[p]rior to initiating field exploration, the client shall provide a detailed site plan."

would not be practical to include in the language of Agreement 27-15, yet

"affects" Agreement 27-15.  The Revised Proposal details all aspects of the

geotechnical services, the subject matter of Agreement 27-15.

{¶41} In our analysis, a second layer of incorporation is set forth in

the general language of the Revised Proposal at **Section 7.0 Authorization**,

which provides as follows:

> If this proposal is acceptable to you, PSI will perform the work in accordance with the attached General Conditions that are incorporated into and made a part of this proposal. Please sign below as notice to proceed and return one copy of this proposal intact to our office. PSI will proceed with the work upon receipt of authorization.

{¶42} When considering that these documents were all part of the

same transaction for provision of geotechnical services and while

considering the "intent of each part," it is not logical to otherwise conclude

that the Revised Proposal was not fully incorporated into Agreement 27-15.

*See Skirvin v. Kidd,* 2007-Ohio-7179, ¶ 19 (4th Dist.) (Trial court correctly

determined the intent of the parties as revealed by only reasonable

interpretation of the original contract and three addenda when read together).

The language of Authorization 7.0 clearly identifies the written material

being incorporated, the attached General Conditions, and the drafter's

purpose to fully incorporate the General Conditions.  We therefore also find

the General Conditions were fully incorporated into the Revised Proposal which was, in turn, fully incorporated into Agreement 27-15.

{¶43} A subsequent contract does not supersede or modify unambiguous terms in a preceding contract unless the subsequent contract specifically evidences an intent to do so. *See Vail v. String,* 2019-Ohio-984, ¶ 33(8th Dist.), citing *Trinova Corp v. Pilkington Bros.,* 70 Ohio St.3d 271, 276-277 (1994). The City has not introduced any evidence via language in Agreement 27-15 and the second agreement that the parties intended to replace Agreement 27-15. *See P&O Containers, Ltd. v. Jamelco, Inc.,* 94 Ohio App.3d 726 (10th Dist.). Our view that Agreement 27-15 was not superseded is bolstered by the City's conduct.

{¶44} In this case, the City sent PSI the May 26, 2015 letter enclosing Agreement 27-15 with Exhibits A, B, and C for PSI's review and execution. That Agreement 27-15—with its Exhibits A, B, and C—functioned as one document, is also evidenced through the deposition testimony of City Engineer Tucker. He testified, as discussed above, that Agreement 27-15, with Exhibits A, B, and C, was the contract between the parties. Tucker testified that Agreement 27-15 which attached the Revised Proposal referencing the erroneous April 21, 2015 date, was a "true and accurate"

copy of the agreement between the parties.[8]  Notably, the City's attorney attached Agreement 27-15, Exhibits A, B, and C, as Exhibit F to the complaint and based on this, the trial court found that "[t]he Plaintiff's Complaint acknowledges that Agreement 27-15 applies."

{¶45} In *Madison, supra,* the school board voted to approve a proposed collective bargaining agreement on June 17, 2008 and then on June 25, 2008, the parties signed a memorandum of understanding supplementing the proposed contract approved on June 17, 2008.  The court found that the contract and memorandum of understanding must be construed together. The court also noted that the memorandum of understanding was attached as an exhibit to the complaint as part of the contract.  The court further noted that having attached both documents to the complaint, it could not therefore complain that the memorandum of understanding was not part of the contract.  We agree with the trial court's perception that the City's action in attaching Agreement 27-15 with Exhibits A, B, and C to the complaint is a

---

[8]We are mindful that questions of law are outside the realm of firsthand knowledge, and thus, a lay witness may not offer legal conclusions. *See Wheatley v. Marietta College,* 2016-Ohio-949, ¶ 83 (4th Dist.) (Citation omitted).  However, questions asked in deposition are equally capable of eliciting factual responses as well as legal conclusions. *See Jones v. Natural Essentials* 2022-Ohio-1010, ¶ 32 (11th Dist.)..  To the extent that deponents offer legal conclusions in their responses, we presume "the trial court did not consider any improper evidence in granting [the] motion for summary judgment." *See DelleCurti v. Fetty,* 2017-Ohio-7965, ¶ 18 (11th Dist.)

strong indication that the City considered Agreement 27-15 and its exhibits

as one fully integrated document.

{¶46} Agreement 27-15 contains an integration clause at Page 7, as

follows:

ARTICLE XVII: ENTIRE AGREEMENT/WAIVER

17.1 This Agreement contains the entire agreement between the parties hereto and shall not be modified, amended, or supplemented, or any rights herein waived, unless specifically agreed upon writing by the parties hereto.

{¶47} Again, when reading Agreement 27-15, the Revised Proposal,

and Exhibit B, the second agreement together, we find that the only logical

interpretation is that the second agreement functioned as a written

supplementation, rather than a superseding agreement. The trial court held

this view also, noting in its decision that:

On June 1, 2015, the City and PSI executed Agreement No. 19011 which incorporated the ODOT requirements. This agreement was not a standalone contract that had replaced the prior terms but added the ODOT requirements to the previously executed Agreement 27-15. There was no additional consideration provided for this agreement.

{¶48} Here there was no new consideration necessary when the second

agreement for purposes of including ODOT requirements was executed. A

promise to do what one is already bound to do brings no detriment to the

promisor and is not consideration. *State of Ohio ex rel. Bd. Of County Com'rs of Athens,* 1995 WL 277164, *4; *Withers v. Ewing,* 40 Ohio St. 400, 407 (1884). Here, the parties were already bound by the signing of Agreement 27-15 on May 26, 2015. There was no additional consideration provided for by the signing of the second agreement on June 1, 2015. " 'The parties to [a] contract need not separately execute the incorporated document in order to be bound by its terms.' " *Bennett v. KeyBank, N.A.,* 2020-Ohio-1152, ¶ 24, (6th Dist.), quoting *Garcia v. Wayne Homes,* 2002-Ohio-1884, ¶ 44 (2d Dist.). And while the City posits: "Why would there be different effective dates instead of one uniform effective date if both contracts were to be construed as one contract," the fact of the differing execution dates is irrelevant when documents are read together. *See Marcinko, supra*, ¶ ¶ 12-13. (Where arbitration agreement was incorporated into purchase contract and documents read together, appellate court disagreed that different signing dates changed outcome). *See also Madison, supra,* (Contract and memorandum of understanding with different dates properly construed together).

{¶49} The City also makes the argument that the express language in the second written agreement expressly identified only certain documents to

be incorporated into the allegedly superseding agreement.  These documents

were specified as follows in Clause IV of the second agreement:

CLAUSE IV- INCORPORATION BY REFERENCE

The following documents, or specified portions thereof, are hereby incorporated into and made a part of this Agreement as though expressly rewritten herein:

(a) The Department of Transportation's "Specifications for Consulting Services, 2010 Edition."
(b) The attached Final Scope of Services Minutes dated April 21, 2014.
(c) The Invoice and Progress Schedule
(d) The most current Office of Budget and Management Travel Policy as published on the State of Ohio Website(http://obm.ohio.gov/MiscPages/TravelRule).

However, based on our prior analysis that Agreement 27-15 with Exhibits A,

B, and C is reasonably read together as one fully integrated document, this

contention is moot and we need not consider it.

Parol Evidence Rule

{¶50} Finally, the City argues that both parties understood that the

second contract was to be substituted for Agreement 27-15.  The City offers

the affidavit of Eric Lambert in support.  However, based on our findings

above, we consequently also find that the Lambert affidavit constitutes parol

evidence which is barred herein.

{¶51} The parol evidence rule is a rule of substantive law which

provides that extrinsic evidence is not admissible to contradict or vary the

terms of an unambiguous contract. *Burton v. Elsea*, 1999 WL 1285874, *5 (4th Dist.); *Ed Schory & Sons, Inc. v. Soc. Natl. Bank*, 75 Ohio St.3d 433, 440 (1996). The purpose of the parol evidence rule is not to exclude all extrinsic evidence in contract cases, but rather to exclude extrinsic evidence which varies, alters, or modifies the terms of the written agreement. *Id.* at 440. The rule derives from the presumption that parties to a contract express their intent through the language they employ in the written agreement, particularly in the instance that the written contract expressly states that it constitutes a complete and accurate integration of the parties' intent. *See Shifrin v. Forest City Ent., Inc.,* 64 Ohio St.3d 635, 638 (1992).

{¶52} Where a document is unclear or ambiguous, parol evidence is admissible for purposes of determining the intent of the parties and clarifying unclear or ambiguous provisions. *Graham v. Drydock Coal Co.,* 76 Ohio St.3d 311, 313 (1996); *Thompson v. Thompson*, 2024-Ohio-147, ¶ 46 (4th Dist.). Here, we have found that the parties entered into an unambiguous contract, constituting a complete and accurate integration of the parties' intent, when they executed Agreement 27-15 which included Exhibits A, B, and C. Consequently, we find that the parol evidence rule bars evidence supplied via Eric Lambert's affidavit which only serves to provide evidence of a contrary intent of the parties.

{¶53} The City next asserts that even if the second written agreement did not supersede Agreement 27-15, Agreement 27-15 did not bar the City's claims. The City points out that the two-year limitation of liability provision appears not in the body of Agreement 27-15, but only in the General Conditions section attached to the Revised Proposal, which was not separately executed by the parties. The City contends that there is nothing in Agreement 27-15 which expressly incorporates by reference PSI's General Conditions.

{¶54} The General Conditions incorporated into the Revised Proposal expressly states at Paragraph 10:

> **NO ACTION OR CLAIM, WHETHER IN TORT, CONTRACT, OR OTHERWISE, MAY BE BROUGHT AGAINST PSI, ARISING FROM OR RELATED TO PSI'S WORK, MORE THAN TWO YEARS AFTER THE CESSATION OF PSI'S WORK HEREUNDER, REGARDLESS OF THE DATE OF DISCOVERY OF SUCH CLAIM.**

{¶55} R.C. 2305.06 provides that an action "upon an agreement, contract, or promise in writing shall be brought within six years after the cause of action accrued." *See Shoregate Towers Partners L.L.C. v. Antebi*, 2021-Ohio-2688, ¶ 103 (8th Dist.). Under Ohio law, however, parties can agree by contract to shorten the applicable statute of limitations to bring an action if the time limit is reasonable and the contract language is clear and

unambiguous. *See Angel v. Reed*, 2008-Ohio-3193, ¶ 11. The language of Paragraph 10 is clear and unambiguous. The City has not argued that the two-year limitations period is unreasonable.

{¶56} The City's argument that the two-year limitations period does not apply is without merit. Having previously discussed "layers of incorporation," we have properly found that Agreement 27-15, along with Exhibits A, the Revised Proposal, B, the second agreement, and C, the Insurance Requirements are properly construed as one clear and unambiguous contract. The General Conditions, therefore, are a clear and unambiguous term properly incorporated into the Revised Proposal which was, in turn, properly incorporated into Agreement 27-15. The two-year limitations period applies to bar the City's claims herein.

Summary Judgment to Intertek PSI

{¶57} The trial court also granted summary judgment to Intertek PSI as "they are just a registered trademark of PSI." Neither party disputes that Intertek PSI is a registered fictitious name under which PSI does business. On appeal, the City's final argument is that PSI's motion for summary judgment should have been denied as to Intertek PSI for the same reasons as it should have been denied to PSI.

{¶58} We must disagree.  It is axiomatic that those not a party to a contract cannot be held liable for a breach of contract.  *See Ingle–Barr, Inc. v. Eastern Local School Dist. Bd.,* 2011-Ohio-584, ¶ 9 (4th Dist.).  *See also Blough v. Smythe Cramer, Co.,* 2012-Ohio-2373, ¶¶15-19 (9th Dist.) (No ambiguities existed as to the identities of the parties to contract so trial court did not err in finding that Willard Inc. (as buyer) was a party to contract and Willard Group, a fictitious name was not a party); *Huffman v. Groff,* 2013-Ohio-222, ¶ 23 (4th Dist.).

{¶59} Our review of Agreement 27-15 demonstrates that Intertek PSI is not listed as a party to the contract.  Joseph Tucker, City Engineer, testified that to his knowledge, PSI was the only corporate entity with which the City entered into any contracts.  The trial court noted in its decision that Intertek PSI "did not enter into any additional contracts with the City."  Here there are no ambiguities as to the identities of the parties to Agreement 27-15, the City of Marietta and PSI.  Thus, the trial court's finding is correct and the City's final argument is also without merit.

Conclusion

{¶60} Based on the foregoing, the City's sole assignment of error is

without merit and is hereby overruled.  The judgment of the trial court is

affirmed.

**JUDGMENT AFFIRMED.**

# JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and Wilkin, J. concur in Judgment and Opinion.

For the Court,


_____
Jason P. Smith
Presiding Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**